JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Kenneth R. Callahan that granted partial summary judgment to appellee, Michael J. Gilchrist, finding that he was entitled to uninsured motorist coverage under an insurance policy issued by United States Fidelity Guaranty Company ("USFG") to his employer, United Rentals ("United"). Appellants, St. Paul Fire and Marine Insurance Company ("St. Paul") and USFG,[1]
contend the policy had matching liability and deductible amounts which made United effectively self-insured and exempt from the provisions of R.C. 3937.18[2] and, therefore, USFG was not required to offer uninsured motorist protection to United. We disagree and affirm.[3]
 {¶ 2} On August 19, 2000, Gilchrist, employed by United as a foreman at a construction site on Interstate 90, was seriously injured when struck by a car operated by Arthur M. Gonsor. He sued Gonsor and later amended the complaint to request a declaratory judgment and damages against St. Paul and USFG, claiming that he was entitled to uninsured/underinsured motorist ("UMI") protection under primary and excess insurance policies issued by USFG to United.[4] USFG filed a joint answer and cross-claim against Gonsor.
 {¶ 3} Moving for summary judgment against Gilchrist, they claimed that there was no UMI coverage available under any of three USFG policies at issue: (1) a primary "business auto coverage" policy, with liability coverage up to $1,000,000 and a corresponding $1,000,000 deductible in the form of a "self-funded retention" endorsement; (2) a $2,000,000 excess liability policy; and (3) a "commercial general liability" policy. Gilchrist claimed that he was entitled to UMI coverage under the primary auto policy because USFG failed to offer UMI coverage to United and obtain an express rejection of that coverage, as required by R.C. 3937.18 and Gyori v. Johnston Coca-Cola Bottling Group,Inc.,[5] and moved for partial summary judgment. USFG countered that the matching liability and deductible amounts rendered United a "practical self-insurer" and therefore exempt from the requirements of R.C. 3937.18 pursuant to Grange Mut. Cas. Co. v. Refiners Transport Terminal Corp.[6]
 {¶ 4} Rejecting the argument that United was a self-insured under the primary business auto policy and exempt from the requirements of R.C. 3937.18, the judge granted Gilchrist's motion for partial summary judgment. Because Gilchrist had abandoned his claims to UMI coverage under the commercial general liability policy, the judge granted summary judgment on that issue to USFG. Finding it was unclear whether Gilchrist's damages would exceed the primary policy's limit, he denied judgment to USFG on UMI coverage under the excess policy. He also determined that there was no just reason for delay.[7] The insurers state a single assignment of error challenging the ruling concerning the primary auto policy:
 {¶ 5} "The trial court improperly denied appellants' motion for summary judgment and granted summary judgment to appellee as to the commercial auto liability policy (`policy no. DRE2256201')."
 {¶ 6} We review the grant of summary judgment de novo, using the same standard as the trial judge.[8] USFG contends that United is exempt from compliance with R.C. 3937.18 because it is a "practical self-insurer," but concedes that Gilchrist would be entitled to UMI coverage under the policy if United is not exempt from the statutory requirements. Because of the matching liability and deductible amounts under the "self-funded retention" endorsement, USFG argues that, under this type of "fronting" policy, United retained all risk of loss and, quoting Grange,[9] was not required to "reject an offer of insurance to one's self."
 {¶ 7} USFG's reliance upon Grange and Lafferty v. RelianceIns. Co.,[10] however, is misplaced. In Snyder v. Roadway Express,Inc., supra, the Ninth Appellate District noted that Ohio does not have mandatory motor vehicle insurance coverage and held that a certificate of self-insurance issued by the registrar of motor vehicles under R.C. 4905.72
satisfies Ohio's financial responsibility law.[11] It held that R.C.3937.18 was expressly intended to apply to insurance carriers writing motor vehicle liability insurance policies for Ohio drivers and not to those providing proof of financial responsibility by posting security under R.C. 4509.12 or one of the exempted alternatives.[12]
 {¶ 8} The Ohio Supreme Court in Grange then built upon Snyder to clarify that not only was a financial responsibility bond not automobile liability insurance, an entity that obtains such financial responsibility under R.C. 4509.59 is also not a self-insured.[13] Such bonds were dissimilar to insurance policies and were intended to protect only the public, while an insurance policy also protects the insured and thus R.C.3937.18 had no application.[14]
 {¶ 9} Moreover, we do not find Lafferty persuasive because the later case of Linko v. Indem. Ins. Co. of N.Am.[15] refuted the district court's holding on offer and rejection of UMI coverage, and because Lafferty's comment that a policy with a matching liability limit and deductible, secured by a letter of credit,[16] made the insured a de facto self-insurer is mere dicta. The judge accepted the rationale that a fronting policy constitutes self-insurance because the insurer is immediately reimbursed for any payments it makes and therefore incurs no risk of loss, its service to the insured being merely "the use of its licenses as an insurer so that [the insured] could satisfy the automobile insurance requirements of the various states in which it operated motor vehicles."[17] This rationale, however, differs from that in Grange and does not support the exemption of a fronting policy from R.C. 3937.18.
 {¶ 10} The dissent argues that United became a self-insurer "in the practical sense," which somehow transformed the insurance policy into a surety bond and eliminated USFG's duty to comply with R.C. 3937.18. Attempting to expand Grange's holding to such "practical self-insurers," however, disregards the critical point: the defendant in Grange had filed an R.C. 4509.58 surety bond satisfying its statutory requirements of financial responsibility. The dissent mistakenly claims that the Grange opinion found that insured parties could be practical self-insurers "even if they did not comply with the statutory means for proving financial responsibility." Such a statement reflects neither Grange's facts, its holding, nor its import.
 {¶ 11} The dissent also claims that we should follow, without question, the decision in Straubhaar v. Cigna Prop. Cas. Co.[18]
In fact, the judge asserts that we should "summarily reverse" the judgment here on the basis of an unexplained decision decided on the accelerated docket. Because the Straubhaar decision fails to explain its rationale, however, it has no persuasive authority.
 {¶ 12} Moreover, the dissent's assertion that his three-paragraph opinion in Straubhaar did not require explanation because it was heard on this court's accelerated docket defeats, rather than supports, his claim that the case should now be regarded as persuasive. Cases on the accelerated docket may be ruled upon with abbreviated opinions,[19] but one engages in such abbreviation only at the cost of persuasive value. The law should always respect sound reasoning over naked appeals to authority.[20]
 {¶ 13} In a well-reasoned opinion, the Tenth Appellate District[21] explained that cases such as Lafferty are mistaken in claiming that the insurer under a fronting policy bears no risk of loss; "the ultimate risk for the loss remains with [the insurer], if [the insured] either refuses or is financially unable to reimburse [the insurer] for the loss."[22] If the policy is certified, the insurers risked "absolute liability" under R.C. 4509.53(A) regardless of contrary terms in the policy. Moreover, under the terms of United's policy, the insured's insolvency does not relieve the insurer "of any obligations under this Coverage Form." USFG did not take these risks lightly — it not only required an annual premium of $35,600, but retained ultimate authority to control the defense of claims and to settle all claims in good faith regardless of the self-funded retention.
 {¶ 14} The USFG declarations page and "covered auto designation symbol" endorsement state that the policy covers "[a]utos for which certification of financial responsibility is required in states where United Rentals is not qualified for self-insurance." This provision verifies that United did not intend to be a self-insured and that the policy was issued to satisfy its financial responsibility requirements, and thus is also intended to qualify as a "motor-vehicle liability policy" under R.C. 4509.01(L), and therefore under R.C. 3937.18.
 {¶ 15} We find, moreover, that allowing United "the use of USFG's licenses as an insurer" is not inconsequential or a mere formality. To the contrary, if an insured chooses to provide proof of financial responsibility by entering into a relationship designed to meet technical statutory requirements, that relationship must comply with those mandates. We disagree with USFG's premise that the policy was wholly a formality, because its insurance policy served a vital purpose in guaranteeing United's financial responsibility under Ohio law. Either United's policy is automobile liability insurance fulfilling all technical requirements or it consists of blank pieces of paper.[23]
USFG "cannot have it both ways."[24]
 {¶ 16} The dissent claims the insurance policy "operates in exactly the same manner as a surety agreement" and thus should be exempted from compliance with statutory requirements for insurance policies. This argument, however, has no bearing on whether a document identified as a motor vehicle insurance policy should be required to satisfy statutory requirements affecting such policies. Nor does the dissent explain how "fronting agreements" can serve a useful purpose when such admittedly ersatz insurance policies are intended to avoid the mandates of Ohio law. If United had wanted financial protection that operated in exactly the same manner as a surety, it should have gotten a surety.
 {¶ 17} The circumstances show that, unlike a surety bond, the USFG policy benefitted United as well as the public, and the Grange
rationale requires that the policy be subject to R.C. 3937.18. United benefitted because USFG bore a risk of loss if it was insolvent or refused to pay, took ultimate responsibility for the defense and payment of claims, and relieved United of the need to comply with bonding, deposit, or other statutory requirements for proving financial responsibility.[25] United paid its premium not only for administrative services, as the dissent claims, but to maintain financial responsibility while avoiding the necessity of tying up capital in surety bonds.
 {¶ 18} Instead of taking its duties of satisfying financial responsibility statutes upon itself, United paid its insurer to do so, and relied upon the insurer to provide it with an adequate "motor-vehicle liability policy."[26] Once this occurred the relationship was no different than that between any insurer and insured, and USFG had a duty to inform its customer of the availability of UMI coverage and offer that coverage as part of the policy. The assignment of error is overruled.
Judgment affirmed.
DIANE KARPINSKI, J., concurs.
MICHAEL J. CORRIGAN, P.J., dissents with separate dissenting opinion.
[1] The policy was issued by USFG, but both it and St. Paul, which issued no policy to United, were named as defendant-insurers, and they have undertaken a joint defense without seeking the dismissal of St. Paul. Therefore, both will be retained as parties to this appeal but will be designated "USFG."
[2] The applicable version of the statute is that in effect on January 1, 2000, the date the policy was issued. Wolfe v. Wolfe, 88 Ohio St.3d 246,250, 2000-Ohio-322, 725 N.E.2d 261.
[3] The Ohio Supreme Court has recently accepted a case involving the same issue. Tucker v. Wilson, 98 Ohio St.3d 1474, 2003-Ohio-904,784 N.E.2d 708. We have determined that a stay is not feasible at this point because of the length this case has been pending and the possibility that the Tucker case will not be decided on its merits. Furthermore, the discussion here might contribute something to the pending arguments and decision in Tucker.
[4] Gonsor subsequently was convicted of aggravated vehicular assault, and his insurer offered Gilchrist the limits of his insurance policy, $12,500.
[5] 76 Ohio St.3d 565, 568, 1996-Ohio-358, 669 N.E.2d 824.
[6] (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310.
[7] Civ.R. 54(B).
[8] Civ.R. 56(C); Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 130-131, 705 N.E.2d 717.
[9] 21 Ohio St.3d at 49, quoting Snyder v. Roadway Express, Inc., (1982), 7 Ohio App.3d 218, 219, 7 OBR 279, 455 N.E.2d 11.
[10] (S.D.Ohio 2000), 109 F. Supp.2d 837.
[11] R.C. 4509.45(D).
[12] R.C. 4509.19 and 4509.45.
[13] Grange, 21 Ohio St.3d at 49-50, citing Republic-Franklin Ins. Co.v. Progressive Cas. Ins. Co. (1976), 45 Ohio St.2d 93, 74 O.O.2d 202,341 N.E.2d 600.
[14] Id.
[15] 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
[16] R.C. Chapter 1305.
[17] Lafferty, 109 F. Supp.2d at 841.
[18] Cuyahoga App. No. 81115, 2002-Ohio-4791.
[19] App.R. 11.1(E); Loc.App.R. 11.1(B)(5).
[20] "An opinion is huddled up in conference, perhaps by a majority of one, delivered as if unanimous, and with the silent acquiescence of lazy or timid associates, by a crafty chief judge . . ." Thomas A. Lipscomb, The Writings of Thomas Jefferson, 1903.
[21] Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015.
[22] Id. at ¶ 42.
[23] The dissent's assertion that the policy defines the limits of United's liability is mistaken. The policy defines USFG's liability, not United's.
[24] Dalton, 2002-Ohio-4015, at ¶ 41.
[25] R.C. 4509.101(G)(1), 4509.45.
[26] R.C. 3937.18(A), 3937.18(L); R.C. 4509.01(L), 4509.49.