DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-Appellants Debra L. and William E. Hall appeal from a summary judgment decision issued by the Pickaway County Court of Common Pleas denying them underinsured motorist coverage under insurance policies issued by the following insurers: 1) Defendant-Appellee/Cross-Appellant Lumbermens Mutual Casualty Company (Lumbermens) to The Penn Traffic Company, the employer of appellants Debra L. and William E. Hall; 2) Defendant-Appellee United Ohio Insurance Company (United) to appellants as a Farm and Ranch policy; and, 3) Defendant-Appellee The Hartford Insurance Company (Hartford) to the employer of appellants' daughter, White Castle Systems, Inc. (White Castle).
 {¶ 2} Appellants assert coverage under the Uninsured Motorist/Underinsured Motorist (UM/UIM) sections of both the Lumbermens Business Auto policy issued to their employer and Hartford's Business Auto policy issued to their daughter's employer, pursuant to the Supreme Court of Ohio's ruling in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116. Appellants also seek UM/UIM coverage by operation of law under the United Farm and Ranch policy, due to a "residence employee" exception to an exclusion therein.
 {¶ 3} We find appellants' arguments as to Lumbermens and United lack merit, but that their argument as to Hartford has merit. Therefore, the judgment of the trial court is affirmed in part and reversed in part, according to the following opinion.
 I. Proceedings Below {¶ 4} The facts, as stipulated by the parties, and procedural circumstances relevant to the issues raised on appeal are as follows:
 {¶ 5} On April 7, 1999, Plaintiff-Appellant Debra L. Hall (Hall) was operating a motor vehicle, of which she was the sole owner, on State Route 104 in Scioto Township, Pickaway County, Ohio. At the same time and place, Roberta Arnold (not a party in this case), an underinsured tortfeasor, negligently operated her vehicle so as to cause a collision with Hall's motor vehicle. As a result, Hall sustained various personal injuries, the extent and nature of which were still in dispute at the time of this appeal.
 {¶ 6} At the time of the accident, Hall was employed by The Penn Traffic Company, which was insured under a Business Auto policy issued by Lumbermens. It was stipulated, however, that Hall was neither operating a company vehicle or acting within the scope of her employment during the accident. The Halls were also insured under two policies issued by United; one was a motor vehicle liability policy, the other was a Farm and Ranch policy. At the time of the accident, the Halls' daughter was employed by White Castle, which was insured under a Business Auto policy issued by Hartford.
 {¶ 7} Debra L. and William E. Hall settled their claims with Ms. Arnold's insurance carrier for $12,500, her policy limit. Appellants also settled their claims with United, under their motor vehicle liability insurance policy, for $37,500, the limit of coverage granted by the UM/UIM section of that policy. Although having exhausted the limits of coverage available under the tortfeasor's policy, as well as their own, appellants argue that they still have not been made whole.
 {¶ 8} Therefore, by their Complaint filed on February 14, 2001, and Amended Complaint filed on August 3, 2001, appellants claimed UM/UIM coverage under three other existing insurance policies: 1) the policy issued by Lumbermens, insuring The Penn Traffic Company, employer of both appellants; 2) appellants' Farm and Ranch policy issued by United; and 3) the policy issued by Hartford to White Castle, the employer of appellants' daughter.
 {¶ 9} Lumbermens, United, and Hartford timely filed their answers, denying that underinsured motorist coverage existed either under the policies or by operation of law. The matter came before the Pickaway County Court of Common Pleas on motions for summary judgment filed by all parties involved. The trial court denied appellants' motion for summary judgment, but granted the motions for summary judgment as to each insurance provider.
 {¶ 10} Specifically, the trial court held that: 1) appellants, pursuant to Scott-Pontzer, were "insureds" under the Lumbermens policy, but that two endorsements, when read together, excluded appellants from any coverage under the UM/UIM section of the Business Auto policy issued to their employer; 2) pursuant to R.C. 3937.18(C), in effect at the time of the accident, White Castle's subsequent reduction of UM/UIM coverage, under its policy issued by Hartford, to the minimum amount allowed under Ohio law four months after commencement of the policy period was valid and took effect the day it was signed rather than at the commencement of the policy period and, therefore, appellants were not entitled to UM/UIM coverage under that policy; and 3) appellants were not entitled to UM/UIM coverage under United's Farm and Ranch policy, which contained a "residence employee" exception to an exclusion for bodily injury arising out of "the ownership, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading, or unloading of motorized vehicles or watercraft," because this exception did not convert the policy into a "motor vehicle liability policy" such that UM/UIM coverage must be offered pursuant to R.C. 3937.18 or it arises as a matter of law.
 II. The Appeal {¶ 11} Appellants timely filed this appeal, raising three assignments of error.
 {¶ 12} First Assignment of Error: "The trial court erred in granting summary judgment in favor of Defendant, Lumbermens Mutual Casualty Company, finding that the Plaintiffs' claims were excluded pursuant to the other owned auto exclusionary language of the policy."
 {¶ 13} Second Assignment of Error: "The trial court erred in granting summary judgment in favor of Defendant, The Hartford, by applying the H.B. 261 standards. Linko v. Indemnity Company of NorthAmerica (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, controls the reduction in UM/UIM coverage in the insurance policy issued to White Castle Systems, Inc."
 {¶ 14} Third Assignment of Error: "The trial court erred in granting summary judgment in favor of Defendant, United Ohio Insurance Company, by holding that the `residence employee' exclusion does not require an offering of UM/UIM coverage in a homeowner's (Farm 
Ranch) Policy."
 {¶ 15} Lumbermens cross appealed the judgment of the trial court, assigning as error the following:
 {¶ 16} First Cross Assignment of Error: "The trial court [erred] in concluding that the appellants were insureds under the Lumbermens Business Auto Policy issued to the Penn Traffic Company."
 {¶ 17} Second Cross Assignment of Error: "The trial court erred in applying Ohio law to the Penn Traffic Company's insurance contract with Lumbermens negotiated and issued in the state of New York."
 {¶ 18} Essentially, Lumbermens argues that the trial court erred by finding that appellants were "insureds" under the policy issued to appellants' employer, The Penn Traffic Company, on two grounds: 1) exclusions and endorsements in the policy excluding appellants as insureds; and 2) New York law, which Lumbermens argues is the applicable law in this case, rendering any Scott-Pontzer analysis inapplicable.
 {¶ 19} Although we will consider Lumbermens' First Cross Assignment of Error within our analysis of appellants' First Assignment of Error pursuant to App.R. 3(C)(2), we are troubled with Lumbermens' Second Cross Assignment of Error. In essence, to sustain this error would require reversal of the trial court's judgment. According to Ohio App.R. 3(C)(1), "A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4." Lumbermens failed to file a notice of cross appeal on this assignment of error. Therefore, because Lumbermens failed to perfect their cross appeal as to its Second Cross Assignment of Error, we dismiss it. See R.C.2505.04.
 {¶ 20} In each of their assignments of error, appellants are challenging the grant of summary judgment to each defendant-appellee, arguing that the policies issued by each insurer provide them UM/UIM coverage for their accident. Therefore, we will examine each policy separately to determine if summary judgment was appropriate.
 A.Summary Judgment {¶ 21} Summary judgment is appropriate when there is no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. See Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 686-687, 653 N.E.2d 1196.
 {¶ 22} We conduct a de novo review of the trial court's decision to grant a motion for summary judgment. See Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Thus, we apply the same standard, and review the same evidence, as the trial court. See Smiddyv. Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212. Moreover, it is well settled that the party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Dresherv. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264.
 A.Appellants' First Assignment of Error — The Lumbermens Policy {¶ 23} At the outset, we must initially determine whether appellants are "insureds" under the Lumbermens Business Auto policy issued to their employer, The Penn Traffic Company. Lumbermens argues in its First Cross Assignment of Error that appellants are not "insureds" under the policy due to exclusionary language therein. We will examine the policy and all relevant endorsements initially to determine whether appellants are "insureds" under the policy. If we find that they are not "insureds," our inquiry as to the Lumbermens policy will end. In the alternative, if we find that appellants are "insureds," then our inquiry must extend to determine whether any endorsements or exclusions are applicable to bar UM/UIM coverage to appellants.
1. Are Appellants "Insureds" Under the Lumbermens Policy?
 {¶ 24} Under a separate endorsement entitled "Ohio Uninsured Motorists Coverage — Bodily Injury," the Lumbermens policy outlines the UM/UIM coverage. This endorsement expressly modifies the "Business Auto Coverage Form," among others. The endorsement also changes who is an insured for purposes of UM/UIM coverage through the following section therein:
 {¶ 25} "Who Is An Insured
 {¶ 26} "1. You.
 {¶ 27} "2. If you are an individual, any `family member.'
 {¶ 28} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 29} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 30} The "Business Auto Coverage Form" contains the following provision: "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." The "COMMON POLICY DECLARATIONS" lists the "NAMED INSURED" as "The Penn Traffic Company." This is clearly a situation where Scott-Pontzer applies.
 {¶ 31} In Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, the Supreme Court of Ohio held that language in an employer's business auto insurance policy referring to "you" in the UM/UIM coverage section was ambiguous. Id.,85 Ohio St.3d at 665, 1999-Ohio-292, 710 N.E.2d 1116. "You" was defined in the policy as the named insured. The named insured was Superior Dairy, a corporation. The Supreme Court of Ohio, therefore, found that "[i]t would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without regard to persons. See Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, 23 O.O.3d 495,433 N.E.2d 547. Rather, it would be reasonable to conclude that `you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id., 85 Ohio St.3d at 664,1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 32} The Supreme Court of Ohio proceeded to examine whether an exclusion applied to bar UM/UIM coverage. Id., 85 Ohio St.3d at 666,1999-Ohio-292, 710 N.E.2d 1116. The court applied the principal articulated in King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,519 N.E.2d 1380, that "`where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.'" Scott-Pontzerv. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d at 665-666, 1999-Ohio-292,710 N.E.2d 1116. The court held that the policy at issue failed to explicitly exclude coverage to employees acting outside the course and scope of employment. Therefore, the Supreme Court of Ohio held that UM/UIM coverage in that case extended to the corporation's employees. This bizarre result can be avoided, however, if insurers, in drafting contracts of insurance, use "language that is clear and unambiguous and that comports with the requirements of the law." See id.,85 Ohio St.3d at 664, 1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 33} In the case sub judice, the language used in the Lumbermens Business Auto policy UM/UIM endorsement was not unambiguous. In fact, the Lumbermens policy contains the same "you" term, defined to mean the same thing (i.e., named insured), and used in a similar section as inScott-Pontzer. See id., 85 Ohio St.3d at 663, 1999-Ohio-292,710 N.E.2d 1116. Therefore, according to the holding in Scott-Pontzer, we find that appellants, as employees of the named insured, The Penn Traffic Company, are "insureds" under the UM/UIM endorsement of the Business Auto policy issued by Lumbermens.
 2. Lumbermens' Cross Assignment of Error {¶ 34} In its First Cross Assignment of Error, Lumbermens argues that two provisions in a separate endorsement, when read together, preclude a finding that appellants were "insureds" under the policy.
 {¶ 35} The first section that Lumbermens points to is the definition of "insured" in the "Business Auto Coverage Form":
 {¶ 36} "SECTION II — LIABILITY COVERAGE
 {¶ 37} "A. COVERAGE We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'
 {¶ 38} "1. Who Is An Insured. The following are `insureds':
 {¶ 39} "a. You for any covered `auto.'
 {¶ 40} "b. Anyone else while using with your permission a covered `auto' you own, hire, or borrow except:
 {¶ 41} "* * *
 {¶ 42} "2) Your `employee' if the covered `auto' is owned by that `employee' or a member of his or her household."
 {¶ 43} The other section relied on by Lumbermens to exclude appellants as "insureds" is found in an endorsement captioned "Drive Other Car Coverage — Broadened Coverage for Named Individuals." This particular endorsement modifies several forms under the policy, including the Business Auto Coverage Form. The endorsement sets forth changes pertinent to UM/UIM coverage in section "C":
 {¶ 44} "C. Changes in Auto Medical Payments And Uninsured And Underinsured Motorist Coverages
 {¶ 45} "The following is added to WHO IS AN INSURED:
 {¶ 46} "Any individual named in the Schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except: Any `auto' owned by that individual or by any `family member.'"
 {¶ 47} Lumbermens argues that these sections, coupled with the fact that the Business Auto policy was amended to include Richard King, an employee who regularly drove company vehicles, as an "insured" in the schedule, clear up any Scott-Pontzer ambiguity by explicitly excluding appellants from being insureds under the policy. We disagree.
 {¶ 48} The first section cited by Lumbermens defines "insured" under the "Business Auto Coverage Form," but is contained under the liability section. Therefore, this definition of "who is an insured," being contained in the "Liability Coverage" section, would not apply to the UM/UIM endorsement. An insurance policy is a contract and the relationship between the parties is contractual. See Nationwide Mut.Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107, 472 N.E.2d 1061. Reasonable construction must be given to the terms of the contract. See DealersDairy Products Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336,164 N.E.2d 745. In order to determine whether the language in a contract is ambiguous, a court must give words and phrases their plain, ordinary or common meaning. See Gomolka v. State Auto Mut. Ins. Co. (1982),70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347. Therefore, given that each section of the Lumbermens policy provides a definition of "insured," we can only conclude that the plain meaning of the definition cited by Lumbermens here, contained in the "Liability Coverage" section, only applies to liability coverage and not to UM/UIM coverage, which separately defines "insured" in the UM/UIM endorsement.
 {¶ 49} The second section relied on by Lumbermens is the "Drive Other Car Coverage — Broadened Coverage for Named Individuals" endorsement, and section "C" contained therein. Section "C" under that endorsement purports to change the coverage under the UM/UIM endorsement. That section reads "[t]he following is added to who is an insured." (Emphasis added.) Lumbermens argues that because the schedule was amended to include Richard King as an "insured" under the schedule, that the term "you" is no longer ambiguous, thus taking the policy out of the ambit of Scott-Ponzter. See Westfield Ins. Co. v. Galatis, 9th Dist. No. 20784, 2002-Ohio-1502.
 {¶ 50} However, the plain language of Section "C" explicitly and unambiguously states that it "add[s] to," rather than substitutes for, the definition of who is an insured in the UM/UIM endorsement under the Business Auto Coverage Form. See Addie v. Linville, 8th Dist. Nos. 80547, 80916, 2002-Ohio-5333, at ¶ 43. Moreover, the mere addition of specific individuals, whether in the common policy declarations or in a separate endorsement, does not, by itself, place the policy outside the scope of Scott-Pontzer. See Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022, at ¶ 4 (stating, "Upon review of the declarations page and the definition of `insured' in the CIC auto policy, we find that the addition of two individual insureds does not remove the ambiguity created by the inclusion of corporate insureds."); see, also, Burkhartv. CNA Ins. Co., 5th Dist. No. 2001CA00265, 2002-Ohio-903 (holding that although specific individuals were named insureds under the Continental policies, such fact does not cure the ambiguity created when "you" refers to the corporation as the named insured).
 {¶ 51} Therefore, the ambiguous "you" remains, and we must applyScott-Pontzer to relieve the ambiguity in favor of the insured. Therefore, we find that "you" still includes employees of The Penn Traffic Company, which is listed as the "NAMED INSURED." Moreover, although this "Broadened Coverage" endorsement attempts to modify the Business Auto Coverage Form, the UM/UIM endorsement itself separately modifies the Business Auto Coverage Form by defining "Who IS An Insured" for purposes of UIM coverage. Therefore, we find that appellants are "insureds" under the Lumbermens policy issued to their employer, The Penn Traffic Company.
 {¶ 52} Lumbermens' First Cross Assignment of Error is overruled.
3. Does an Exclusion Apply to Bar Coverage to Appellants?
 {¶ 53} Our inquiry turns now to whether an exclusion applies to preclude appellants from coverage under the UM/UIM endorsement. For its support, Lumbermens points to an exclusion contained in the UM/UIM endorsement, typically referred to in insurance parlance as the "other owned vehicle" exclusion, which states:
 {¶ 54} "C. Exclusions
 {¶ 55} "This insurance does not apply to:
 {¶ 56} "* * *
 {¶ 57} "5. `Bodily Injury' sustained by:
 {¶ 58} "a. You while `occupying' or when struck by any vehicle owned by you that is not a covered `auto' for Uninsured Motorist Coverage under this Coverage Form." (Emphasis added.)
 {¶ 59} Appellants contend that the exclusion relied on by Lumbermens to deny coverage does not comply with the applicable version of R.C. 3937.18 in effect at the time[1]. We note that the former version of R.C. 3937.18, as enacted by Am.Sub.H.B. No. 261, effective September 3, 1997, applies to this case because the Lumbermens policy was issued to The Penn Traffic Company after its enactment but before the effective date of any subsequent amendments to R.C. 3937.18. See Ross v.Farmers Ins. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381,695 N.E.2d 732, syllabus; Weyda v. Pacific Employer's Ins. Co., 1st Dist. No. C-020410, 2003-Ohio-443, at ¶ 5. Accord Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261, paragraph two of the syllabus.
 {¶ 60} The pertinent section relied on by appellants is found at former R.C. 3937.18(J), which states:
 {¶ 61} "The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 62} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of anamed insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided[.]" (Emphasis added.)
 {¶ 63} Appellants argue that the statute allows for an insurance policy to exclude from UM/UIM coverage only those vehicles "owned by, furnished to, or available for the regular use of the name insured" that are not "specifically identified in the policy." R.C. 3937.18(J)(1). (Emphasis added.) Appellants further contend that the car appellant was driving was not "owned by, furnished to, or available for the regular use of the named insured," and that this distinction renders the exclusion in the policy either void, as it did not comply with the language from the statute which grants the exclusion, or inapplicable, because it can only exclude autos owned by the "named insured," The Penn Traffic Company, that are not identified in the policy.
 {¶ 64} Appellants rely primarily on two cases that have considered the "other owned vehicle" exclusion, Purvis v. Cincinnati Ins. Co., 2nd Dist. No. 2001-CA-104, 2002-Ohio-1803, and Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022. The policies at issue in both Purvis and Kasson contained the "other owned vehicle" exclusion. However, the exclusions in those policies mirrored the language of R.C. 3937.18(J)(1), excluding UM/UIM coverage for bodily injury sustained by an insured "while the `insured' is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured * * * if the motor vehicle is not specifically identified in the policy * * *."Purvis; Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022, at ¶ 42. The exclusionary language in those cases, as well as the language of the statute, is more specific. They exclude injuries to the "insured" while operating a vehicle owned by the "named insured." The exclusion in the Lumbermens policy, however, excludes injuries to "you" and while operating a vehicle owned by "you."
 {¶ 65} The Lumbermens policy defines "you" as the "named insured."Scott-Pontzer indicated that the term "you" could reasonably be interpreted to include a corporation's employees, since a corporation can only act through "real live employees." Scott-Pontzer v. Liberty Mut.Fire Ins. Co., 85 Ohio St.3d at 664, 1999-Ohio-292, 710 N.E.2d 1116. However, as used in the Lumbermens policy exclusion, "you" necessarily refers to both the named insured and insured. Although our intent is not to encourage insurers to draft ambiguous exclusions in their policies, we opt to follow the line of cases holding that an "other owned vehicle" exclusion, written with an ambiguous "you" term as the one in the Lumbermens policy, is permissible and consistent with R.C. 3937.18(J)(1). See Weyda v. Pacific Employer's Ins. Co., 1st Dist. No. C-020410, 2003-Ohio-443, at ¶ 15; Niese v. Maag, 3rd Dist. No. 12-02-06, 2002-Ohio-6851, at ¶ 8; Jones v. Nationwide Ins. (July 23, 2001), 5th Dist. No. 2000CA00329; Gaines v. State Farm Mut. Auto Ins. Co., 10th Dist. No. 01-AP-947, 2002-Ohio-2087, at ¶ 28-29; Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814 (although holding that "[u]nder the plain meaning of the statute [the] `other owned auto' exclusions are permissible only when the auto is owned by the named insured," the court found that "`[y]ou' includes employees of the corporate insured regardless of where it appears in the policy. Because `you' and `named insured' are synonymous under the policy, [employee] is a named insured. [Employee's husband] is therefore `a spouse, or a resident relative of a named insured,' and the exclusion is enforceable as to [employee's husband] under R.C. 3937.18(J)(1)").
 {¶ 66} Appellants further argue that if the exclusion is found to be valid under R.C. 3937.189(J)(1), that the term "you" is still ambiguous, and that the ambiguity should be resolved against the drafter of the policy language, i.e., Lumbermens. While the use of the word "you" in the exclusion is ambiguous, we feel that the ambiguity was resolved byScott-Pontzer. Certainly, it is appropriate for the term "you" to mean both the "insured" and "named insured." Appellants attempt to argue that where "you" is used to include coverage for them, that it should be interpreted as such, but where "you" is used to exclude coverage, that we should find that "you" refers solely to the named insured. Appellants seek to have their cake and eat it too. Under these circumstances, however, we cannot allow appellants such a sweeping benefit from the ambiguity. The preferred interpretation of the term "you" andScott-Pontzer is to apply "you" consistently throughout the policy. SeeMazza v. American Continental Ins. Co., 9th Dist. No. CA21192, 2003-Ohio-360, at ¶ 40; Niese v. Maag, 3rd Dist. No. 12-02-06, 2002-Ohio-6851, at ¶ 11; Weyda v. Pacific Employer's Ins. Co., 1st Dist. No. C-020410, 2003-Ohio-443, at ¶ 15. Therefore, because "you" referred to appellants under the definition of "insured" for inclusion under the policy, appellants are also included within the term "you" for purposes of the "other owned vehicle" exclusion.
 {¶ 67} Our inquiry turns next to whether appellant was driving a "covered auto" for purposes of the exclusion. If she was not, then the exclusion will bar coverage. If she was, coverage will not be barred by the exclusion.
 {¶ 68} "Covered autos" are defined for each coverage under Section I of the Business Auto Coverage Form. That section states "The symbols entered next to a coverage on the Declarations designate the only `autos' that are covered `autos.'" Under the UM/UIM coverage, the symbol "6" is entered for "covered autos." The symbol "6" covers the following autos:
 {¶ 69} "OWNED `AUTOS' SUBJECT TO A COMPULSORY UNINSURED MOTORIST LAW. Only those `autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorist Coverage. This includes those `autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement."
 {¶ 70} Former R.C. 3937.18 in effect at the time, required insurers to offer UM/UIM coverage under policies of insurance for motor vehicle liability insurance. R.C. 3937.18(A), as amended by H.B. No. 261. However, R.C. 3937.18(C) provided that "[a] named insured or applicant may reject or accept both coverages as offered under division (A) of this section * * *." Therefore, because appellants could reject UM/UIM coverage, the vehicle appellant was driving did not qualify as an auto "subject to a compulsory uninsured motorist law." As such, it was not a "covered auto" under the Lumbermens Business Auto policy.
 {¶ 71} Thus, because appellant was driving an "auto" owned by her, which was not a covered auto, she was not covered under the UM/UIM endorsement of The Penn Traffic Company's Business Auto policy issued by Lumbermens since the "other owned vehicle" exclusion bars coverage to her.
 {¶ 72} Appellants' First Assignment of Error is overruled.
C. Appellants' Second Assignment of Error — The Hartford Policy
 {¶ 73} In their Second Assignment of Error, appellants seek coverage under the UM/UIM section of the Business Auto policy issued by Hartford to White Castle, the employer of appellants' daughter. Appellants claim that their daughter, as an employee of White Castle, is an insured under the policy, pursuant to Scott-Pontzer. The UM/UIM endorsement states:
 {¶ 74} "B. WHO IS AN INSURED
 {¶ 75} "1. You.
 {¶ 76} "2. If you are an individual, any `family member.'"
 {¶ 77} Accordingly, appellants argue and Hartford does not deny, that this section extends coverage to them by virtue of being a "family member" of an insured, i.e., their daughter. See Ezawa v. Yasuda Fire Marine Ins. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124,715 N.E.2d 1142.
 {¶ 78} Hartford, however, denied that coverage extends to appellants for two reasons: 1) Hartford offered and White Castle selected $25,000 of UIM coverage, the minimum in Ohio, but that appellants' prior recovery of $50,000 in damages exceeds the underinsured coverage under the policy; and 2) White Castle is effectively a self-insurer by virtue of a $500,000 policy deductible, and, therefore, it was exempt from complying with the requirements of R.C. 3937.18 in offering UIM coverage for the amount of the deductible.
 {¶ 79} The trial court granted summary judgment in favor of Hartford, ruling that White Castle executed a valid reduction form, and, based on R.C. 3937.18(C), it must be presumed that Hartford offered UM/UIM coverage to White Castle, and that the reduction form became effective on the date signed, October 27, 1998. Appellants argue that the reduction form, in essence, operated as a rejection of UM/UIM coverage, and that such a rejection was invalid unless received by the insurer prior to commencement of the policy period. Therefore, because the policy period commenced on July 1, 1998, the rejection was invalid. Furthermore, appellants argue that because the reduction form failed to satisfy the requirements of a valid offer as set forth in Linko v. Indemn. Ins. Co.of N. Am., 90 Ohio St.3d 445, 2002-Ohio-92, 739 N.E.2d 338, UM/UIM coverage arises by operation of law with coverage limits equal to the limits for liability under the policy, i.e., $1,000,000. Following the Supreme Court of Ohio's decision in Kemper v. Michigan Millers Mut. Ins.Co., 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, we agree with appellants that the reduction form signed by White Castle failed to comply with the requirements for a valid written offer as set forth in Linko.
 {¶ 80} Once again, we review the grant of summary judgment de novo. See Grafton, supra.
1. Gyori and Linko
{¶ 81}The version of R.C. 3937.18(C) effective prior to September 3, 1997, provided, in pertinent part, that "[n]o automobile liability or motor vehicle liable policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both [UM and UIM] coverages are offered to persons insured under the policy * * *." R.C.3937.18(A)(1). Further, R.C. 3937.18(A)(1) and (2) provided that UM/UIM coverages must be offered "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *." If the insurer fails to offer UM/UIM coverage as required by the statute, such coverage will arise automatically by the operation of law in an amount equal to the liability limits. See Carmona v. Blankenship, 10th Dist. No. 02AP-14, 2002-Ohio-5003, at ¶ 21; Abate v. Pioneer Mut. Cas.Co. (1970), 22 Ohio St.2d 161, 163, 258 N.E.2d 429. "When UM/UIM coverage arose by operation of law, the coverage was not necessarily subject to the limits identified in the policy because there was nothing in the policy to limit the scope of the implied coverage." Roper v. State Auto.Mut. Ins. Co., 1st Dist. No. C-010117, 2002-Ohio-3283, at ¶ 22.
 {¶ 82} If an insured did not wish to have UM/UIM coverage or to select UM/UIM coverage in a lesser amount than liability coverage, R.C.3937.18(C) provided that "[t]he named insured may only reject or accept both [UM/UIM] coverages * * *. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts * * *."
 {¶ 83} The form requirements for offer, acceptance, and rejection of UM/UIM coverage in Ohio have been litigated ad nauseam. In Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565,669 N.E.2d 824, the Supreme Court of Ohio held that no offer of UM/UIM coverage satisfied R.C. 3937.18 unless it is in writing. Id. at paragraph one of the syllabus. As to rejections of such coverage, the Supreme Court of Ohio further held that no rejection satisfied the statute unless it too is in writing and received by the insurer prior to the commencement of the policy period. Id. at paragraph two of the syllabus. The court also held that "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider." Id. at paragraph one of the syllabus.
 {¶ 84} In Linko, supra, the Supreme Court of Ohio refined the requirements necessary to constitute an insurer's valid written offer stating that "a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." Therefore, the court listed four required elements for meaningful written offers. The elements required that the insurer: 1) inform the insured of the availability of UM/UIM coverage, 2)expressly set forth the premium for that coverage, 3)include a brief description of the coverage, and 4) expressly state the UM/UIM coverage limits in its offer. Id. at 447-448,2002-Ohio-92, 739 N.E.2d 338.
 {¶ 85} In 1997, the General Assembly amended R.C. 3937.18(C) with Am.Sub.H.B. No. 261, effective September 3, 1997. That section states, in the pertinent part:
 {¶ 86} "A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. * * * A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants."
 {¶ 87} It is within these parameters that we will examine first, the effective date of White Castle's selection of lower UM/UIM coverage, and second, whether Hartford's offer of UM/UIM coverage complied with the requirements of Linko.
 2. Effective Date of the Reduction Form {¶ 88} Hartford issued the Business Auto policy to White Castle on July 1, 1998, after the effective date of the 1997 amendments to R.C.3937.18. Therefore, that version of the statute controls the policy at issue in the case sub judice. See Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d 281, 287, 1998-Ohio-381, 695 N.E.2d 732. White Castle selected the minimum amount of UM/UIM coverage in a document entitled "SUPPLEMENTAL APPLICATION UNINUSURED MOTORIST COVERAGE — OHIO" ("reduction form). That reduction form, however, is dated October 27, 1998, almost four months after the commencement of the policy period. Appellants argue that White Castle's selection of lower UM/UIM limits was invalid because the reduction form was not received by the insurer prior to commencement of the policy period, as required by Gyori, supra. Therefore, appellants argue, the selection of lower UM/UIM coverage would not take effect until commencement of the next policy period beginning July 1, 1999, and would have no effect upon appellants' accident or claim. We are not persuaded.
 {¶ 89} The 1997 amendments to R.C. 3937.18(C) were passed in response to the decision in Gyori. See Martinez v. Travelers Ins. Co., 9th Dist. No. 20796, 2002-Ohio-1979, appeal not allowed,96 Ohio St.3d 1494, 774 N.E.2d 767, 2002-Ohio-4534; Roper v. State Auto.Mut. Ins. Co., 1st Dist. No. C-010117, 2002-Ohio-3283, at ¶ 26;Raymond v. Sentry Ins., 6th Dist. No. L-01-1357, 2002-Ohio-1228. The statute clearly and explicitly "rejected the requirement that the offer and rejection be made prior to the effective date of the policy." Roperv. State Auto. Mut. Ins. Co., 1st Dist. No. C-010117, 2002-Ohio-3283, at ¶ 26; see, also, Raymond, supra. Therefore, according to the statute, a valid rejection of both coverages or a selection of lower coverage "shall be effective on the day signed" and creates a presumption of an offer of UM/UIM coverages. R.C. 3937.18(C). Thus, if White Castle's selection of lower UM/UIM coverage in the reduction form was valid, it will be effective on the day it was signed — October 27, 1998.
 3. Effect of the Statutory Presumption of Valid Offer {¶ 90} As discussed earlier, the General Assembly amended R.C.3937.18(C) in 1997 to create a presumption of a valid offer if the insured signed a written rejection of UM/UIM coverage or selected a lesser amount of coverage. See Martinez, supra. However, the Supreme Court of Ohio, in Kemper v. Michigan Millers Mut. Ins. Co.,98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, held that the Linko requirements, relative to an offer of UM/UIM coverage, were still applicable to a policy of insurance written after enactment of [1997] H.B. No. 261 but before [2001] S.B. No. 97. Therefore, our inquiry next turns to the effect this presumption has on the reduction form in which White Castle selected a lesser amount of UM/UIM coverage. We will then address whether, if that presumption is rebutted, Hartford validly offered UM/UIM coverage to White Castle pursuant to Linko.
 {¶ 91} In Minor v. Nichols, Jackson App. No. 01CA14, 2002-Ohio-3310, we stated the following with respect to the presumption granted by former R.C. 3937.18(C):
 {¶ 92} "A presumption shifts the evidentiary burden of producing evidence, i.e., the burden of going forward, to the party against whom the presumption is directed. See Weissenberger, Ohio Evidence (2001) 44. However, a rebuttable presumption does not carry forward as evidence once the opposing party has rebutted the presumed fact. Forbes v. Midwest AirCharter, Inc., 86 Ohio St.3d 83, 86, 1999-Ohio-85, 711 N.E.2d 997. Thus, once the presumption is met with sufficient countervailing evidence, it fails and serves no further evidentiary purpose. The case then proceeds as if the presumption had never arisen. See Horsley v. Essman (Aug. 29, 2001), Scioto App. No. 01CA2762 [145 Ohio App.3d 438, 2001-Ohio-2557,763 N.E.2d 245]; Ellis v. [Miller] (Aug. 16, 2001), Gallia App. No. 00CA17 [2001-Ohio-2549]." Minor v. Nichols, Jackson App. No. 01CA14, 2002-Ohio-3310, at ¶ 14.
 {¶ 93} In Minor, we held that the signed copy of the "UNINSURED/UNDERINSURED MOTORIST COVERAGE SELECTION/REJECTION/LIMITS SUMMARY form created a presumption of an offer of coverage consistent with R.C. 3937.18(A). Minor v. Nichols, Jackson App. No. 01CA14, 2002-Ohio-3310, at ¶ 17. Minor, the appellant in that case, attempted to rebut the presumption by characterizing that same form as including the offer, and then argued that the form did not satisfy the Linko requirements for a valid written offer. Id.
 {¶ 94} However, we found that the form Minor relied on to rebut the presumption did not include the offer, but rather, that the offer was contained in a separate form entitled "UNINSURED/UNDERINSURED MOTORISTS SELECTION/REJECTION AND LIMITS." Minor v. Nichols, Jackson App. No. 01CA14, 2002-Ohio-3310, at ¶ 18. Therefore, Minor "could not look to the summary form to supply the terms of the offer." Id. Thus, we held that Minor did not carry her burden of rebutting the presumption of a valid offer created by R.C. 3937.18(C).
 {¶ 95} In the case at bar, White Castle's signed selection of lower UM/UIM limits creates the presumption that Hartford validly offered UM/UIM coverage as mandated by R.C. 3937.18(A). See R.C. 3937.18(C). This presumption shifts the burden to appellants to present evidence that rebuts the presumption of a valid offer. See Pillo v. Stricklin, 5th Dist. No. 2001CA00204, 2001-Ohio-7049, affirmed by 98 Ohio St.3d 163,2002-Ohio-7090, 781 N.E.2d 198. To fulfill their burden, appellants point to the reduction form, arguing that it contained the offer of UM/UIM coverage and that this form did not conform to the requirements of Linko for a valid offer. We note that it is perfectly appropriate for appellants to rebut the presumption by presenting the same document that created the presumption. See Palmer v. Ohio Mut. Ins. Group, 7th Dist. No. 865, 2002-Ohio-6908, at ¶ 32 (stating, "The signed rejection form, standing alone, raised the presumption that appellee made a valid offer of UM/UIM coverage. * * * Appellant has met her burden by using the same form that raised the presumption in the first place."). Thus, we will examine the contents of the reduction form to see that it contains the four elements required by Linko.
 {¶ 96} Hartford presented White Castle with the reduction form and White Castle signed it. That form included a preliminary paragraph stating that UM/UIM bodily injury coverage must be offered to White Castle by law at a limit equal to the liability limits under the policy. The paragraph goes on to explain that "You may reject [UM/UIM-Bodily Injury] entirely, if you submit a signed rejection." Following that introductory paragraph are three sections, written in standard "boilerplate" language, entitled "UNINSURED MOTORIST COVERAGE — BODILY INJURY," "UNINSURED MOTORIST COVERAGE — PROPERTY DAMAGE," and "QUESTIONS ABOUT YOUR COVERAGE OPTIONS." We are concerned with the first paragraph dealing with coverage for bodily injury. That paragraph contains four separate paragraphs, stating the following:
 {¶ 97} "Applies to: All motor vehicles covered by your policy.
 {¶ 98} "Covers: You, if you are an individual named insured; Relatives living with you; and Other people in your motor vehicle.
 {¶ 99} "Benefits: Uninsured Motorist Insurance in Ohio provides protection for bodily injury arising from the ownership, maintenance or use of an uninsured motor vehicle. An uninsured motor vehicle is one for which insurance does not provide the amounts required by the applicable law, or for which insurance limits meet the amounts required by law but are less than the limit of insurance of this coverage.
 {¶ 100} "Limit: We recommend a limit equal to the Liability Insurance Limit you have chosen for your policy. Protection you provide yourself and occupants of your motor vehicle should equal the protection you provide others. Lower limits are available, but they cannot be less than the Financial Responsibility Limit of Ohio. You may reject Uninsured Motorist Coverage — Bodily Injury entirely, if you submit a signed request."
 {¶ 101} On the second page of this form is a section entitled "UNINSURED MOTORIST COVERAGE — BODILY INJURY." Underneath that heading are four boxes, with options next to each box. The boxes allow for the insured to place an "X" next to the option it wishes to select for their policy. White Castle's agent placed an "X" next to the box labeled "Minimum amount available in Ohio." White Castle's agent then signed and dated the form.
 {¶ 102} Applying the Linko requirements, we cannot find that this form embodies a complete written offer. In fact, Hartford did not argue that the offer was valid under Linko; it argued that the Linko requirements did not apply. After Kemper, supra, Hartford's argument fails. Linko requires that the insurer's offer contain the following: the availability of UM/UIM coverage, the premium for that coverage, a description of the coverage, and expressly state the UM/UIM coverage limits in its offer. See Linko v. Indemn. Co. of N. Am.,90 Ohio St.3d at 447-448, 2002-Ohio-92, 739 N.E.2d 338. In Hartford's reduction form, which embodies the complete written offer, there is no statement that sets forth the premium or that "expressly states the UM/UIM coverage limits." We find that a check box setting the limits generically as the "Minimum amount available in Ohio" falls short of that required byLinko. Moreover, the form does not mention the premium for that coverage. Because Hartford's form fails to satisfy the second and fourth prongs of Linko, we find that Hartford failed to meet the mandatory offer requirements of R.C. 3937.18(C) and Linko, and White Castle's selection of lower limits is, therefore, not valid. See German v. Therm-O-Disc,Inc., 5th Dist. No. 01CA51-2, 2002-Ohio-1848; see, also, Pillo, supra.
 {¶ 103} Accordingly, we find appellants have presented enough evidence to rebut the presumption conferred on Hartford by former R.C.3937.18(C). Absent a valid rejection or a valid selection of lower UM/UIM limits, UM/UIM coverage is deemed equal to liability coverage by operation of law. See Pillo, supra; see, also, Poots v. Motorist Ins.Cos. (1986), 38 Ohio App.3d 48, 526 N.E.2d 71. Thus, by operation of law, Hartford's policy is deemed to contain UM/UIM coverage for $1,000,000 per accident.
 4. Hartford's Argument that White Castle is a "Self Insurer" {¶ 104} Hartford argues that UM/UIM is unavailable to appellants because White Castle is effectively self-insured up to $500,000, the deductible contained in its "DEDUCTIBLE — REIMBURSEMENT ENDORSEMENT." Hartford asserts that even if we were to find that UM/UIM coverage arises by operation of law (as we did), that a self-insured entity need not comply with the requirements of R.C. 3937.18(C) in offering UM/UIM coverage for the amount of the deductible. Therefore, Hartford argues, White Castle is responsible for any loss up to the amount of the deductible. While this may be true, we find that this fact does not operate to convert White Castle into a "self-insurer" so that it relieves Hartford from its UM/UIM obligations.
 {¶ 105} Hartford's policy issued to White Castle contains a "DEDUCTIBLE — REIMBURSEMENT ENDORSEMENT" which expressly "modifies insurance provided under the: BUSINESS AUTO COVERAGE FORM — LIABILITY COVERAGE, GARAGE COVERAGE FORM — LIABILITY COVERAGE, [and] TRUCKERS COVERAGE FORM — LIABILITY COVERAGE." The deductible amount is for $500,000 per occurrence.
 {¶ 106} The central determination of whether an entity is self-insured focuses on who bears the risk of loss. See Dalton v.Wilson, 10th Dist. No. 01AP-014, 2002-Ohio-4015, at ¶ 64. "Self-insurance is not insurance; it is the antithesis of insurance."Physicians Ins. Co. of Ohio v. Grandview Hosp. Med. Ctr. (1988)44 Ohio App.3d 157, 158, 542 N.E.2d 706. Whereas insurance involves the actual shifting of the risk of loss from the insured to the insurer, "self-insurance involves no risk-shifting. * * * The defining characteristic of insurance, the assumption of specific risks from customers in consideration for payment, is entirely absent where an entity self-insures." Jennings v. Dayton (1996), 114 Ohio App.3d 144,148, 682 N.E.2d 1070.
 {¶ 107} The General Assembly has set forth specific requirements to qualify as a self-insurer in the motor vehicle context. See R.C.4509.45. R.C. 4509.45(E) provides the mechanism by which proof of financial responsibility may be given by filing a certificate of self-insurance as provided in R.C. 4509.72. Hartford has not claimed that White Castle filed the appropriate certificate of self-insurance pursuant to the statute. Nor is there evidence that White Castle is a surety bond principal pursuant to R.C. 4509.54(C). Rather, Hartford claims that White Castle is a self-insurer in the "practical sense," pursuant to the Supreme Court of Ohio's decision in Grange Mut. Cas. Co. v. RefinersTransport and Terminal Corp. (1986), 21 Ohio St.3d 47, 487 N.E.2d 310, solely by virtue of the $500,000 deductible contained in the policy for insurance that Hartford issued to White Castle.
 {¶ 108} In Grange, an employee of Refiners was fatally injured by an uninsured motorist while driving a truck in the course and scope of his employment. Refiners complied with state financial responsibility requirements for its truck fleet through a financial responsibility bond along with two policies for excess insurance coverage, none of which included UM/UIM coverage. Grange, the decedent's personal automobile insurer, settled with the decedent's estate and then filed a declaratory judgment action against Refiners, alleging that R.C. 3937.18 required Refiners, as a self-insurer, to provide UM/UIM coverage on its truck fleet and drivers. Refiners argued that it was not a self-insurer, and regardless, Ohio law did not require UM/UIM coverage be provided either by a self-insurer or under a financial responsibility bond.
 {¶ 109} Chief Justice Celebrezze, writing for the court, framed the issue as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements concerning uninsured motorist coverage contained in R.C. 3937.18 relative to employees injured in the course of employment while driving or occupying a vehicle owned by the employer." Id. at 48, 487 N.E.2d 310. The court declared that Refiners was not a "`self-insurer' in the legal sense contemplated by R.C. 4509.45(D) and 4509.72." Id. at 49, 487 N.E.2d 310. However, Refiners' efforts to meet its financial responsibility obligations by purchasing a financial responsibility bond and two excess insurance policies made it a self-insurer "in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id.
 {¶ 110} The court further held that "since we find that [Refiners'] status was actually that of a bond principal and not a self-insurer, a conclusion that the requirements of R.C. 3937.18 are not applicable is even more compelling." Id. The court determined, however, that "whether [Refiners] is considered a bond principal, self-insurer, or both," Refiners was not subject to the requirements of the uninsured motorist statute. Id. at 50, 487 N.E.2d 310. Notwithstanding its precise framing of the issue, the court broadly held that the "uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at the syllabus.
 {¶ 111} In its brief, Hartford relies on numerous cases that liberally extend the holding in Grange to cover "fronting policies" with matching liability limits and deductibles. See Lafferty v. Reliance Ins.Co. (S.D.Ohio 2000), 109 F. Supp.2d 837; McCollum v. Continental Ins.Co. (Apr. 9, 1993), Lucas App. No. L-92-141; Fonseca v. Fetter (June 15, 2001), Lucas C.P. No. CI 99-4712; and Dewalt v. State Farm Ins. Cos.
(Sept. 11, 1997), Lake C.P. No. 96CV001173. A "fronting policy" involves an agreement between an entity and insurer in which the entity rents an insurance company's licensing and filing capabilities in a particular state. Commonly, the entity will pay a yearly "fee" and the insurance company will file the necessary documents to satisfy the state's financial responsibility laws. See McCollum, supra. When the deductible matches the liability limit, the entity will be obligated to reimburse the insurer for the entire amount of payments made under the policy, and often times this obligation is secured by a letter of credit. See Lafferty, supra. Sometimes, the entity will take on the administrative duties usually held by the insurer such as claims investigation and payment of costs associated with processing the claims. See Dewalt, supra. In these cases, the courts have held that the entities were "self-insurers" in the practical sense because ultimately, the policy did not shift the risk of loss to the insurer; instead, the entity remained responsible for payment of any judgment or claim. See Lafferty,McCollum, Fonseca, Dewalt, and Grange, supra.
 {¶ 112} In the case sub judice, the policy does not involve a "fronting agreement" with matching deductible and liability limits. The policy merely contains a deductible reimbursement agreement, requiring Hartford to pay those amounts in excess of the stated deductible. Moreover, the policy's business auto form contains a bankruptcy clause, stating that "Bankruptcy or insolvency of the `insured' or the `insured's' estate will not relieve us of any obligations under this Coverage Form." All of this is evidence that White Castle did not retain one hundred percent of the risk of loss under the policy. Hartford was obligated to pay any claim that exceeded the deductible amount, or any claim in the event that White Castle became insolvent or filed for bankruptcy. The essential characteristic to qualify as a self-insurer in the practical sense is that "insured" bear the ultimate risk of loss, so that essentially none of the risk has shifted to the insurance company. Under their agreement, White Castle is not ultimately responsible for losses because the actual risk has shifted to Hartford. Therefore, White Castle is not "self-insured" in the practical sense. Both White Castle and Hartford were required to comply with R.C. 3937.18.
 {¶ 113} We also believe that the deductible reimbursement cannot apply to limit UM/UIM coverage in this instance. First, by its own express words, the deductible reimbursement endorsement "modifies insurance provided under the: BUSINESS AUTO COVERAGE FORM — LIABILITY COVERAGE, * * *." Therefore, by its own words, Hartford wrote the deductible to apply to the business auto form solely for liability coverage, and not UM/UIM coverage. Second, we found that UM/UIM coverage existed by operation of law in the amount of the policy's liability coverage because Hartford's offer failed to comply with the requirements of Linko. In Scott-Pontzer, the Supreme Court of Ohio determined that "any language in the Liberty Mutual Umbrella Policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage" when UM/UIM coverage arises by operation of law. Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d at 666, 1999-Ohio-292, 710 N.E.2d 1116; see, also, Germanv. Therm-O-Disc, Inc., 5th Dist. No. 01CA51-2, 2002-Ohio-1848. Based on this rationale, we find that the deductible language in Hartford's policy is a restriction on liability coverage, and does not extend to UM/UIM coverage arising by operation of law.
 {¶ 114} Appellants' Second Assignment of Error is sustained.
 D. Appellants' Third Assignment of Error — The United Policy {¶ 115} In their Third Assignment of Error, appellants seek coverage under the residence-employee exception in their Farm and Ranch policy issued by United. Appellants contend that the Farm and Ranch policy expressly provides automobile liability coverage against liability to resident employees injured in the course and scope of employment, qualifying the policy as a "motor vehicle" policy for the purposes of former R.C. 3937.18. Because UM/UIM coverage was not offered by United as required by the statute, appellants argue that it arises by operation of law.
 {¶ 116} The Supreme Court of Ohio, in Hillyer v. State Farm Fire Cas. Co., 97 Ohio St.3d 411, 2002-Ohio-6662, 780 N.E.2d 262, held that "a residence-employee clause in an insurance policy that provides coverage incidental to home ownership does not convert the policy into a motor vehicle policy subject to the mandates of former R.C. 3937.18." Id. at ¶ 13, 2002-Ohio-6662, 780 N.E.2d 262. The court agreed with the Cuyahoga County Court of Appeals rational in Panozzo v. AllstateIns. Co. (Sept. 13, 2001), Cuyahoga App. No. 79083, that "`the defining characteristic of coverage [in the resident-employee exception] is the person injured [the resident-employee], not the fact that a motor vehicle was involved.'" Hillyer v. State Farm Fire Cas. Co., at ¶ 24,2002-Ohio-6662, 780 N.E.2d 262. The fact that a motor vehicle may be involved is incidental to the coverage afforded by the policy. Id.
 {¶ 117} Based on the Supreme Court of Ohio's holding and rational in Hillyer, the policy issued by United was not a "motor vehicle" liability policy subject to the requirements of former R.C. 3937.18.
 {¶ 118} Appellants' Third Assignment of Error is overruled.
 III. Conclusion {¶ 119} Accordingly, appellants' First and Third Assignments of Error and Lumbermens' First Cross Assignment of Error are each overruled. Lumbermens' Second Cross Assignment of Error is dismissed. However, because the reduction/selection form signed by White Castle reducing UM/UIM coverage to the minimum amount required by Ohio law did not satisfy the requirements for a "complete written offer" as required by Linko, appellants' Second Assignment of Error has merit and is sustained. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.
Judgment affirmed in part, reversed in part, and remanded for furtherproceedings.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED INPART and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed equally between the parties.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the PICKAWAY COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error III and Dismissal of Lumbermens Mutual Casualty Company's Cross Assignment of Error II; Concurs in Judgment Only in All Other Regards.
Abele, J.: Concurs in Judgment and Opinion as to Assignment of Error III; Concurs in Judgment Only as to Assignment of Error I and Cross Assignments of Error I and II; Dissents as to Assignment of Error II.
[1] The General Assembly has amended R.C. 3937.18 several times in the last couple of years. The first modification occurred in 1997 with H.B. No. 261. The next amendment came in 1999 with S.B. No. 57. The most recent amendment was passed in 2001 by S.B. No. 97. For our purposes, H.B. No. 261, the 1997 version of the statute, and "former R.C. 3937.18" are synonymous. The 1997 version is applicable to insurance policies written after 1997, but before the 1999 or 2001 amendments. See Ross v.Farmers Ins. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381,695 N.E.2d 732, syllabus.