OBLINGER et al.,

v.

STATE AUTO INSURANCE COMPANIES, Appellant;

National Union Fire Insurance Company of Pittsburgh, Appellee.

[Cite as *Oblinger v. State Auto Ins. Cos.*, 163 Ohio App.3d 266, 2005-Ohio-4695.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040856.

Decided Sept. 9, 2005.

268

Brown, Lippert, Heile & Evans and David A. Laite, for plaintiffs.

Droder & Miller Co., L.P.A., and Richard J. Rinear, for appellant.

Janik & Dorman, L.L.P., and Brian D. Spitz, for appellee.

---

HILDEBRANDT, Presiding Judge.

{¶ 1} Defendant-appellant, State Auto Insurance Companies, appeals the summary judgment entered in favor of defendant-appellee, National Union Fire Insurance Company of Pittsburgh, in a declaratory-judgment action filed by plaintiffs, Edward J. Oblinger and Sharon Oblinger. For the following reasons, we reverse the judgment of the trial court.

{¶ 2} In December 2000, Edward Oblinger was driving a tractor-trailer owned by U.S. Freightways Corporation, the parent corporation of his employer, USF Dugan, Inc. While in the course of his employment, he was involved in an accident with Deborah Dove.

{¶ 3} The Oblingers sued Dove for the injuries sustained in the accident. They also filed a declaratory-judgment action against State Auto and National Union, seeking a declaration that the insurers were obligated to provide uninsured/underinsured motorist ("UM/UIM") coverage. The Oblingers asserted that State Auto owed coverage under a policy issued to their closely held corporation and that National Union owed coverage under a policy issued to U.S. Freightways and to USF Dugan.

{¶ 4} State Auto then filed a cross-claim against National Union. State Auto stipulated that its policy provided the Oblingers with UM/UIM coverage, but claimed that the National Union policy with U.S. Freightways and USF Dugan provided primary UM/UIM coverage. State Auto asserted that its coverage would apply only after the National Union policy limits were exhausted.

### The Two Judgments

{¶ 5} State Auto and National Union filed cross-motions for summary judgment. National Union claimed, among other things, that U.S. Freightways had declined UM/UIM coverage and that, in any event, the tractor-trailer that Edward Oblinger was operating at the time of the accident was not a covered vehicle under the policy. National Union did not argue that the Oblingers were not insureds under the definition contained in the policy's UM/UIM coverage form.

{¶ 6} In a judgment journalized January 16, 2004, the trial court granted summary judgment in favor of National Union, holding that its policy did not cover the Oblingers' asserted losses.

{¶ 7} State Auto then assumed the defense of the action. After a jury trial, the trial court entered judgment in favor of the Oblingers, and against State Auto, in the amount of $47,307.22. That judgment was journalized on November 16, 2004. A notice of final judgment was sent to the parties on November 17, 2004.

{¶ 8} State Auto filed a timely notice of appeal with respect to the summary judgment entered January 16, 2004. It did not appeal the judgment of November 16, 2004.

## State Auto's Standing to Appeal

{¶ 9} In a single assignment of error, State Auto now contends that the trial court erred in entering summary judgment in favor of National Union on the cross-claim.

{¶ 10} As a threshold matter, though, we must address National Union's argument that State Auto does not have standing to appeal. National Union argues that because the Oblingers did not appeal the January 16, 2004 judgment, the trial court's holding that State Auto's policy provided the sole coverage to the Oblingers was res judicata. In a related argument, National Union contends that because State Auto did not appeal the November 16, 2004 judgment, State Auto's obligation to pay the Oblingers the sum of $47,307.22 was also res judicata.

{¶ 11} We find no merit in National Union's arguments. First, the Oblingers would have had no reason to appeal the judgment entered January 16, 2004. That judgment merely determined the manner in which the asserted damages would be allocated between the insurers. The Oblingers simply had no legal interest in that judgment, given that coverage was determined to exist.[1]

{¶ 12} Similarly, State Auto had no reason to appeal the judgment of November 16, 2004, because it did not contest the amount of damages owed to the Oblingers. The only issue in dispute was which insurer would be responsible for paying that amount of damages. State Auto properly preserved that issue by filing a notice of appeal with respect to the trial court's ruling on the cross-claim.

{¶ 13} Nonetheless, National Union suggests that an immediate appeal could have been taken from the January judgment, so that there would have been a decision concerning which insurer would have assumed the defense of the action. This argument is also without merit. The trial court explicitly declined to add Civ.R. 54(B) language to the January judgment, thus precluding an immediate appeal. Moreover, because National Union did not dispute the amount of damages owed to the Oblingers, it can claim no prejudice as a result of State Auto's having defended the action.

---

1. See, generally, *Lamp v. Richard Goettle, Inc.*, 1st Dist. No. C–04061, 2005-Ohio-1877, 2005 WL 927164, at ¶ 13.

{¶ 14} In sum, we hold that State Auto properly preserved its standing to appeal the trial court's entry of summary judgment on the cross-claim, and we proceed to the merits of the appeal.

## Summary Judgment: *Gilchrist* and *Linko*

{¶ 15} Pursuant to Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]  This court reviews the granting of summary judgment de novo.[3]

{¶ 16} Here, there is no dispute concerning the material facts.  The parties agree that there remains only the legal issue of which insurer owed coverage under the version of R.C. 3937.18, as amended in 1997 by H.B. No. 261, that was in effect at the time of the accident.

{¶ 17} In granting summary judgment, the trial court noted that the National Union policy required the insured to reimburse the insurer for all amounts paid up to the policy limits and that, therefore, the UM/UIM requirements of R.C. 3937.18 did not apply.  National Union has apparently abandoned any argument with respect to that "fronting" provision.  But we note that the Supreme Court of Ohio has held that fronting policies are not exempt from the mandates of R.C. 3937.18.[4]

{¶ 18} The primary basis of the trial court's decision, though, was that U.S. Freightways had rejected UM/UIM coverage with respect to the National Union policy.  We disagree.

{¶ 19} The requirements for a valid rejection of UM/UIM coverage are enumerated in *Linko v. Indemn. Ins. Co. of N. Am.*[5]  In *Linko*, the court held that an offer of UM/UIM coverage must inform the insured of the availability of UM/UIM coverage, describe the coverage, list the premium costs of the coverage,

---

2. See *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

3. *Jorg v. Cincinnati Black United Front,* 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled, 100 Ohio St.3d 1471, 2003-Ohio-5772, 798 N.E.2d 406.

4. *Gilchrist v. Gonsor,* 104 Ohio St.3d 599, 2004-Ohio-7103, 821 N.E.2d 154, syllabus.

5. *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338.

and expressly state the coverage limits.[6]   If the offer or the rejection of coverage does not establish that these requirements have been met, coverage arises by operation of law.[7]

{¶ 20} The Supreme Court of Ohio has recently held, in *Hollon v. Clary*,[8] that once a signed rejection form has been produced, the elements of the offer, as required under *Linko*, may be demonstrated by extrinsic evidence.   The parties here agree that the *Linko* requirements, as further developed in *Hollon*, applied to the National Union policy.[9]

{¶ 21} In the instant case, the rejection form and the extrinsic evidence did not satisfy the *Linko* requirements for a valid rejection of UM/UIM coverage.   The rejection form, while it declared the availability of UM/UIM coverage and described in general terms the nature of such coverage, was utterly silent as to the premium costs of such coverage or the policy limits.

{¶ 22} In an attempt to supplement the terms of the rejection form, National Union offered the affidavit of Thomas Clarke, the risk-management officer for U.S. Freightways.   But Clarke merely stated that "USF had the option of accepting or rejecting uninsured/underinsured ("UM/UIM") coverage under the * * * Policy, and intended to reject such coverage on behalf of itself and all of its subsidiaries.   * * * Within the four corners of the * * * Policy, the Rejection Form describes UM/UIM coverage, gives premium cost and expressly state [sic] the coverage limits."

{¶ 23} Despite the recitation in Clarke's affidavit that the rejection form included the *Linko* requirements, the form manifestly did not.   As we have already noted, the form was completely silent as to premium cost and coverage limits.   Clarke's assertion that the form included that information did not make it so.   And because Clarke did not aver that he had been informed of the *Linko* elements by any source other than the rejection form itself, the evidence did not support the trial court's holding that U.S. Freightways had validly rejected UM/UIM coverage.

{¶ 24} Moreover, even had Clarke validly rejected UM/UIM coverage on behalf of U.S. Freightways, the evidence did not establish that he had done so on behalf of USF Dugan.   Under *Linko*, separately incorporated named insureds

---

6.   Id. at 447–448, 739 N.E.2d 338.

7.   Id. at 449, 739 N.E.2d 338; R.C. 3937.18(C)

8.   *Hollon v. Clary*, 104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881, syllabus.

9.   See, also, *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196 (*Linko* requirements survived the enactment of H.B. No. 261).

must be specifically listed in the rejection form, and the subsidiary's authorization to its parent corporation to waive UM/UIM coverage on its behalf must be incorporated into the contract.[10]

{¶ 25} Here, the rejection form did not separately list USF Dugan, and there was no provision in the policy giving U.S. Freightways the authority to waive UM/UIM coverage on behalf of USF Dugan. Thus there was no valid rejection of UIM/UIM coverage with respect to USF Dugan.

{¶ 26} For these reasons, we hold that the trial court erred in deciding that there had been a valid rejection of UM/UIM coverage under the National Union policy. Under *Linko*, then, coverage arose by operation of law.

### "Covered Autos" Under the National Union Policy

{¶ 27} National Union next argues that even if UM/UIM coverage had arisen by operation of law, the Oblingers were not entitled to coverage, because Edward Oblinger was not operating a "covered auto" within the meaning of the policy language. We must therefore determine whether the tractor-trailer that Edward Oblinger was operating at the time of the accident was a covered vehicle.

{¶ 28} National Union argues that R.C. 3937.18(J)(1) permitted it to narrow the class of vehicles to which UM/UIM coverage applied.[11] The applicable version of the statute provided that a policy "may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances: (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."

{¶ 29} In this case, the policy had a heading entitled "SCHEDULE OF COVERED AUTOS YOU OWN." Under this heading was a single listing that stated "PER SCHEDULE ON FILE WITH COMPANY."

{¶ 30} But because National Union did not produce the schedule to which the policy referred, it could not demonstrate that the tractor-trailer in question was "not specifically identified in the policy under which a claim is made." Accordingly, National Union could not claim the benefit of the limitation permitted under R.C. 3937.18(J)(1).

---

10.  *Linko*, supra, 90 Ohio St.3d at 450–451, 739 N.E.2d 338; *Morton v. Continental Cas. Ins. Co.*, 1st Dist. Nos. C–030771 and C–030799, 2004-Ohio-7126, 2004 WL 3015322, at ¶ 16.

11.  See *Weyda v. Pacific Employer's Ins. Co.*, 151 Ohio App.3d 678, 2003-Ohio-443, 785 N.E.2d 763, at ¶ 6 (insured may be denied coverage under R.C. 3937.18(J) where he is not operating a covered vehicle).

{¶ 31} Nonetheless, we address National Union's argument that the policy's general designation of "covered autos" for purposes of UM/UIM coverage precluded coverage in the instant case.

{¶ 32} The National Union policy had a listing of "COVERAGES AND COVERED AUTOS" and a corresponding number identifying a class of "covered autos" to which the given type of coverage applied.

{¶ 33} For UM/UIM coverage, the covered-auto designation was "45." Under the description of covered-auto designations, "45" was defined as follows: "OWNED 'AUTOS' SUBJECT TO A COMPULSORY UNINSURED MOTOR-ISTS LAW. Only those 'autos' you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those 'autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement."

{¶ 34} National Union contends that because the tractor-trailer was garaged in Ohio and because Ohio was not a state in which UM/UIM coverage was required and could not be rejected, the tractor-trailer was not a covered auto under the policy.

{¶ 35} Although we agree that the language of the policy excluded the tractor-trailer, we hold that this portion of the policy, which effectively excluded all autos garaged in Ohio from UM/UIM coverage, contravened public policy as expressed in R.C. 3937.18.

{¶ 36} The legislature has enacted specific provisions designed to prevent insureds from unknowingly rejecting UM/UIM coverage. These protections, as described in *Linko* and its progeny, are eviscerated when the insurance contract itself in effect eliminates UM/UIM coverage from all vehicles without regard to the notification and rejection requirements of R.C. 3937.18. Here, the automatic exclusion of all autos garaged in Ohio was an attempt to subvert the statutory scheme of mandatory offer and rejection.

{¶ 37} In another context, the Supreme Court of Ohio has held that a clause in a policy preventing an insured from realizing all the benefits due under R.C. 3937.18 was void as against public policy.[12] In this case, National Union attempted to prevent the insured from realizing *any* of the protections afforded under the statute and applicable case law.

---

12. See *Berrios v. State Farm Ins. Co.,* 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149 (reducing UM/UIM coverage for medical payments provided under another portion of a policy contravenes the protections afforded under R.C. 3937.18).

{¶ 38} Although the Fourth Appellate District has enforced a provision similar to the one in the case at bar,[13] we cannot countenance its enforcement in light of the policy considerations already described.

{¶ 39} Accordingly, we hold that the tractor-trailer that Edward Oblinger was operating when the accident occurred was a "covered auto" under the National Union policy and that the Oblingers were entitled to UM/UIM coverage.

### Priority of Coverage

{¶ 40} Given that both the State Auto and National Union policies provided UM/UIM coverage, we must now determine which policy covered the loss in the instant case.

{¶ 41} State Auto's policy provided, "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." Because the Oblingers, as insured persons under the State Auto policy, did not own the tractor-trailer, this provision applied to the coverage in the case at bar.

{¶ 42} By contrast, the National Union policy's UM/UIM form provided the following: "[W]e will pay only our share of the loss that must be paid under insurance providing coverage on a [primary or an excess] basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a [primary or an excess] basis."

{¶ 43} When construing a pro rata provision and an excess provision in two policies, effect must be given to the pro rata provision first, so that the policy with the pro rata provision is read to provide primary coverage.[14]

{¶ 44} Here, the National Union policy provided pro rata coverage while the State Auto policy provided excess coverage. The National Union policy must therefore be given effect, and we hold that it provided primary coverage.

{¶ 45} Moreover, because the loss in this case was less than National Union's policy limit, the trial court erred in holding that State Auto was liable. The assignment of error is accordingly sustained.

---

**13.** See *Hall v. Kemper Ins. Cos.*, 4th Dist. No. 02CA17, 2003-Ohio-5457, 2003 WL 22336027, at ¶ 70, jurisdictional motion overruled, 101 Ohio St.3d 1468, 2004-Ohio-819, 804 N.E.2d 41.

**14.** *Mullins v. Dado* (Mar. 27, 1998), 1st Dist. No. C–970087, 1998 WL 140021, citing *Motorists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.* (1965), 1 Ohio St.2d 105, 30 O.O.2d 428, 205 N.E.2d 67, syllabus.

## Conclusion

{¶ 46} Having held that the National Union policy provided primary coverage for the losses sustained by the Oblingers, we reverse the trial court's summary judgment journalized January 16, 2004. We also reverse the judgment journalized November 16, 2004, to the extent that State Auto was held liable for the damages awarded to the Oblingers. We hereby enter judgment in favor of the Oblingers and against National Union in the amount of $47,307.22.

Judgment accordingly.

PAINTER and HENDON, JJ., concur.