[Cite as *Roush v. Butera*, 2012-Ohio-2506.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97463**

# CHARLES W. ROUSH, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# JOANN BUTERA, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-490493

**BEFORE:** Cooney, J., Celebrezze, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 7, 2012

**ATTORNEY FOR APPELLANTS**

David L. Meyerson
Seaman Garson, LLC
1600 Rockefeller Building
614 West Superior Avenue
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEES**

**National Union Fire Insurance Co.**

Steven G. Janik
Crystal L. Maluchnik
Janik LLP
9200 South Hills Blvd., Suite 300
Cleveland, OH 44147-3521

**Nationwide Mutual Insurance Co.**

Aaron M. Minc
James A. Sennett
Sennett Fisher, LLC
One Chagrin Highlands
2000 Auburn Dr., Suite 200
Beachwood, OH 44122

**Also listed:**

Joann Butera, pro se
3608 West 133rd Street
Cleveland, Ohio 44111

COLLEEN CONWAY COONEY, J.:

{¶1} Plaintiffs-appellants, Charles Roush ("Roush") and Dorothy Roush (collectively referred to as "appellants"), appeal the trial court's grant of summary judgment in favor of National Union Fire Insurance Company ("National Union") and Nationwide Insurance Company ("Nationwide"), on their claims for uninsured/underinsured motorist ("UM/UIM") coverage. We find no merit to the appeal and affirm.

{¶2} In January 2001, Roush was driving a truck owned by U.S. Freightways Corp. ("USF"), a parent corporation of his employer, USF Holland, Inc. ("Holland"). The truck was insured under two National Union policies: Trucker's Liability Policy No. 527-32-99, effective June 30, 2000 to June 30, 2001, with liability limits of $2 million (the "Trucker's Policy"); and Umbrella Liability Policy No. BE 932-25-54, effective June 30, 1997 to June 30, 2002, with liability limits of $8 million in excess of the Trucker's Policy limits (the "Umbrella Policy"). The Trucker's Policy contained a deductible in the amount of $1,750,000. Roush also had his own individual insurance with Nationwide.

{¶3} While driving the truck within the course and scope of his employment, Roush was involved in a motor vehicle accident in January 2001. It is undisputed that Joann Butera ("Butera"), an uninsured driver, proximately caused the accident. Roush

sued Butera for injuries sustained in the accident. He also sued National Union and Nationwide for UM/UIM coverage. Dorothy Roush alleged a loss of consortium claim.

{¶4} National Union filed a motion for summary judgment, claiming appellants were not entitled to UM/UIM coverage because the policyholders, Holland and USF, waived UM/UIM coverage when they accepted their insurance policies. To prove the waiver, National Union presented an Ohio UM/UIM rejection form and alleged that Thomas Clarke ("Clarke"), USF's Vice President of Risk Management, signed the form in March 1999. Roush disputed the credibility of National Union's rejection form and Clarke's affidavit testimony on the grounds that the rejection form does not have a policy number, or a receipt or file stamp of the agency or insurer, and is not referenced in any other policy or lists of policies. Roush also asserted that the signature on the rejection form is not dated. In his affidavit, Clarke stated that he had written authority from Holland to waive UM/UIM coverage on Holland's behalf.

{¶5} Nationwide also filed a motion for summary judgment, arguing that appellants' insurance policy with Nationwide excluded UM/UIM coverage because Roush was operating an unlisted vehicle that was "furnished" to him and "available for regular use" at the time of the accident.

{¶6} On April 28, 2004, at National Union's request, the trial court stayed the case pending the Ohio Supreme Court's ruling in *Gilchrist v. Gonsor*, 118 Ohio St.3d 1511, 2008-Ohio-3369, 889 N.E.2d 1028. The Ohio Supreme Court released its decision in *Gilchrist* in July 2008, and the trial court reactivated this case in February 2009. After

additional discovery and briefing on the motions for summary judgment, the trial court granted the motions in favor of both National Union and Nationwide, and found that Roush was not entitled to UM/UIM coverage under any policies issued by either insurer.

{¶7} Appellants now appeal and raise eight assignments of error.

## Standard of Review

{¶8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc*., 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp*., 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

## Waiver of UM/UIM Coverage

{¶9} In the first and second assignments of error, appellants argue the trial court erred in finding that USF and Holland rejected UM/UIM coverage. They contend that because the offer of UM/UIM coverage failed to contain the elements required under *Linko v. Indemn. Ins. of N. Am.,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000), USF's rejection of UM/UIM coverage is invalid and coverage arises by operation of law.

**{¶10}** The statutory law in effect at the time of entering into a contract for automobile liability insurance determines the rights and duties of the contracting parties. *Ross v. Farmers Ins. Group*, 82 Ohio St.3d 281, 1998-Ohio-381, 695 N.E.2d 732, syllabus.

**{¶11}** Appellants argue the trial court erred in finding that USF and Holland rejected UM/UIM coverage because there is no evidence that National Union's offer of UM/UIM coverage complied with the requirements set forth in *Linko* and *Gyori v. Johnston Coca-Cola Bottling Group, Inc.*, 76 Ohio St.3d 565, 568, 1996-Ohio-358, 669 N.E.2d 824.

**{¶12}** In *Gyori*, the plaintiff was injured in an automobile accident on December 12, 1990 and sued his employer's insurance carrier for UM/UIM coverage. The insurer argued that Gyori was not entitled to UM/UIM benefits because it had rejected UM/UIM coverage. The Ohio Supreme Court disagreed and held that pursuant to R.C. 3937.18, as it existed at that time, there could be no rejection absent a written offer of UM/UIM coverage from the insurance provider. *Gyori* at 568. In *Linko*, the high court further held that:

> To satisfy the offer requirements of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer.

*Linko* at 447-448.

**{¶13}** If the insurer failed to meet any one of these requirements, the insured's rejection of coverage was invalid and UM/UIM coverage arose by operation of law equal to the policy's liability limits.  *Id.*

**{¶14}** As previously stated, the Trucker's Policy was effective from June 30, 2000 to June 30, 2001.  It is governed by R.C. 3937.18, as amended by H.B. 261 and S.B. 57, which became effective on September 3, 1997 and November 2, 1999, respectively. *Gyori* and *Linko* were both decided before the General Assembly passed H.B. 261 and S.B. 57.  In *Hollon v. Clary*, 104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881, the Ohio Supreme Court explained that H.B. 261 modified the strict *Linko* requirements. The written offer of UM/UIM coverage at issue in *Hollon* did not set forth the premiums for the coverage.  Nevertheless, the court recognized that in light of the presumption of an offer of coverage created by the H.B. 261 version of R.C. 3937.18(C), "*Linko's* requirements are arguably less relevant."  *Id.*  The court reiterated that the *Linko* requirements were chosen to ensure that an insurer makes a meaningful offer, which is "an offer in substance and not just in name," and which allows the insured to make "an express, knowing rejection of [UM/UIM] coverage." *Id.*, quoting *Linko*, 90 Ohio St.3d at 449, 739 N.E.2d 338 (2000).  Accordingly, the court went on to hold that "[o]nce a signed rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence." *Id.* at syllabus.

**{¶15}**  The *Hollon* court determined the parties' intent from an unrebutted affidavit of the insured, attesting that:

Before approving and signing these rejection forms, I was informed, aware, and understood: (a) that UM/UIM coverage was available; (b) the amount of the premium that would be charged for UM/UIM coverage if I selected UM/UIM coverage, or of the reduced premium if I selected reduced UM/UIM limits; (c) what UM/UIM coverage was; and (d) that I was rejecting UM/UIM coverage in its entirety.

*Id.* at ¶ 6.

**{¶16}** Based on this affidavit, the *Hollon* court concluded that the insured had made "an express, knowing rejection of UM/UIM coverage, under H.B. 261," and that the court could presume that a valid offer had been made. *Id.* at ¶ 13.

**{¶17}** This court followed *Hollon* in *Bossin v. Groves*, 8th Dist. No. 92975, 2010-Ohio-664. In *Bossin*, an employee of Viacom Outdoor Group, Inc. ("Viacom") sued Travelers, Viacom's motor vehicle insurer, for UM/UIM coverage following an accident. Travelers denied coverage on the grounds that Viacom, through its director of insurance, had rejected UM/UIM coverage. Bossin asserted that the rejection was invalid because it failed to comply with *Linko*. This court disagreed and, following *Hollon,* found that despite the fact that the rejection form Travelers produced failed to contain the coverage premiums, the named insured's knowledge of the premiums could be demonstrated by extrinsic evidence. *Id.* at ¶ 15.

**{¶18}** Travelers produced affidavits, one from a director at Travelers who had met with Viacom's director of insurance, and the other from a Viacom manager. The Viacom manager attested that

the rejection was consistent with Viacom's policy to reject UM/UIM coverage whenever possible, that Viacom was aware that an increase in premiums would be charged for such coverage and that Viacom made a

knowing business decision to reject UM/UIM coverage for the state of Ohio.

*Id.* at ¶ 17.

**{¶19}** Based on this evidence, this court found that "the extrinsic evidence offered by Travelers was sufficient to demonstrate that Viacom was aware that additional coverage premiums would be charged and, that consistent with its company policy, made a knowing rejection of UM/UIM coverage." *Id.* at ¶ 18.

**{¶20}** In support of its motion for summary judgment, National Union submitted the affidavit of Thomas Clarke, USF's risk manager, which provided, in pertinent part:

> 3. Attached hereto as Exhibit A-1 is an authentic copy of ISO Form No. 62582 (5/95), titled "REJECTION OF UNINSURED/ UNDERINSURED MOTORISTS COVERAGE OR SELECTION OF LOWER LIMIT OF LIABILITY (Ohio) ("Rejection Form") which I executed on behalf of U.S. Freightways Corporation ("USF") on March 19, 1999;
>
> 4. At the time I executed the Rejection Form, I was employed by USF in the capacity of Vice President of Risk Management. By reason of this position, I was familiar with USF's insurance program, and duly authorized to act on behalf of USF including, but not limited to, the execution of the rejection of uninsured/underinsured ("UM/UIM") coverage;
>
> 5. The Rejection Forms are part of Trucker's Liability Policy No. 527-32-99 effective July 1, 2000 to July 1, 2001 ("Policy"), and manifests the intent of USF to reject UM/UIM coverage in Ohio.
>
> 6. Before approving and executing the Rejection forms, USF and I were informed, were aware, and understood:
>
> a. that UM/UIM coverage was available in increments up to an amount equal to the Policy's liability limits;
>
> b. the method of calculating premiums for coverage under the Policy, the amount of additional premium that would be charged for UM/UIM coverage if USF selected full UM/UIM coverage, and the amount of

premium that would be charged if USF selected a reduced limit of UM/UIM coverage;

c.  the purpose of UM/UIM coverage; and that by signing the Rejection Form, USF was rejecting Ohio UM/UIM coverage in its entirety.

7.  USF intended to reject UM/UIM coverage in all states where such coverage is not mandatory and intended to select the lowest limit of UM/UIM coverage required in the jurisdictions where UM/UIM coverage is mandatory, so as to avoid the payment of additional premium for such coverage.

**{¶21}** In a supplemental affidavit, Clarke explained that it was USF's policy to reject UM/UIM coverage whenever possible for two reasons.  First, National Union issued the insurance policies as part of a fronting agreement under which USF had agreed to reimburse National Union for all amounts paid under its Trucker's policy.  Thus, if USF selected UM/UIM coverage, it would be responsible for both general liability damage and UM/UIM benefits to its employees, as well as additional premiums.  Second, USF did not see the need to purchase UM/UIM coverage when its employees were already protected within the scope of their employment under a state worker's compensation law.  USF's purchase of UM/UIM coverage would duplicate this protection at additional cost to USF.

**{¶22}** In addition to Clarke's affidavits, National Union submitted documentary evidence showing that: (1) USF had rejected UM/UIM coverage every year as far back as 1989, when it was insured by a different carrier; (2) USF repeatedly informed National Union over a period of six years that it wanted to reject such coverage in all states where

permitted; and (3) for the policy year in question, USF signed rejection forms for every state where it did business, including Ohio.

**{¶23}** Appellants argue that Clarke's affidavit should be rejected as self-serving because USF's substantial deductible would render it personally liable for appellants' damages up to $1,750,000. Appellant also claims there are suspicious inconsistencies in USF's documentation that cast doubt on Clarke's credibility.

**{¶24}** However, the documentary evidence unequivocally demonstrates USF's intent to reject UM/UIM coverage. The evidence also shows that Clarke, as the risk manager of a trucking fleet, was familiar with UM/UIM coverage and understood the ramifications of any rejection of that coverage. Like Viacom in *Bossin*, USF made a knowing business decision to reject UM/UIM coverage in Ohio. Based on this evidence, we agree with the trial court's finding that National Union made a valid offer of UM/UIM coverage, which was properly rejected.

### Holland's Rejection

**{¶25}** Appellants argue that even if USF rejected UM/UIM coverage, the rejection does not apply to its subsidiary, Holland. However, this court has recognized that the General Assembly altered the common law under post-H.B. 261 versions of R.C. 3937.18, and held that a parent corporation's rejection of UM/UIM coverage is binding upon its subsidiary where the parent corporation was the named insured. *Bossin*, 8th Dist. No. 92975, 2010-Ohio-664; *Rice v. Progressive Max Ins. Co.,* 8th Dist. No. 83970,

2004-Ohio-6107. Although Holland used the truck involved in Roush's accident, USF owned and insured the truck.

**{¶26}** Moreover, Clarke stated in his affidavit that he was authorized by Holland to negotiate automobile insurance coverage and reject UM/UIM coverage on its behalf. Absent an express, statutory provision requiring a power of attorney, a parent corporation's authority to act on behalf of its subsidiary can be established through extrinsic evidence. *Lee v. Hennick*, 52 Ohio St. 177, 181, 39 N.E. 473 (1894). Evidence in the record shows that Holland has relied on USF to negotiate insurance on its behalf for eleven years. This fact, coupled with Clarke's affidavit, demonstrates that USF had authority to reject UM/UIM coverage on behalf of Holland.

The Umbrella Policy

**{¶27}** Appellants argue that even if USF rejected UM/UIM coverage under the Trucker's Policy, they are entitled to drop down coverage from the Umbrella Policy.[1] However, appellants never stated a claim for coverage under the Umbrella Policy in their complaint. Although they attempted to amend their complaint to assert a claim for coverage under the Umbrella Policy, the trial court denied the motion to amend as

---

[1] Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps in coverage both vertically, by providing excess coverage, and horizontally (by providing primary coverage). The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to "drop down" to provide primary coverage for situations where the underlying insurance provides no coverage at all. *Sarka v. Love* 8th Dist. No. 85960, 2005-Ohio-6362, ¶ 12, quoting *Wright v. Medamerica Internatl. Ins. Ltd.*, 2d Dist. No. 19809, 2003-Ohio-5723, ¶ 32.

untimely. Thus, the trial court never determined whether there was coverage under the Umbrella Policy. As an appellate court, we do not consider arguments that the trial court did not address. In *Murphy v. Reynoldsburg*, the Ohio Supreme Court explained that "[a] reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court." *Id.*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992). We, therefore, do not consider issues raised for the first time on appeal. *Id.*

Collateral Estoppel

{¶28} Appellants contend that National Union should be estopped from arguing that the UM/UIM rejection form is valid because the First District Court of Appeals has already held that this rejection form is unenforceable as a matter of law. *See Oblinger v. State Auto Ins. Co.*, 163 Ohio App.3d 266, 2005-Ohio-4695, 837 N.E.2d 815 (1st Dist.). In *Oblinger*, the plaintiff was injured while driving a truck for his employer, USF Dugan, another subsidiary of USF. The plaintiff argued that USF's rejection of UM/UIM coverage was invalid because it did not satisfy the strict *Linko* requirements. As in this case, National Union argued USF had rejected UM/UIM coverage on behalf of USF Dugan, and supported its argument with an affidavit from the same witness, Thomas Clarke.

{¶29} In reversing the trial court's grant of summary judgment in favor of National Union, the *Oblinger* court held the UM/UIM rejection was invalid because extrinsic

evidence did not satisfy the *Linko* requirements. Because the First District determined that National Union's rejection of UM/UIM coverage was invalid in *Oblinger*, appellants argue the doctrine of collateral estoppel precludes National Union from relitigating this issue here.

{¶30} Collateral estoppel, also referred to as the doctrine of issue preclusion,

> holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

*Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998), citing *Norwood v. McDonald* 142 Ohio St. 299, 52 N.E.2d 67 (1943).

{¶31} Ohio courts have held that a judgment can operate as collateral estoppel only where all of the parties to the prior proceeding in which the judgment is relied upon were bound by the judgment. *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978 (1983). The operation of the rule must be mutual. *Id.* If a judgment cannot be effective as res judicata against a particular person, he cannot avail himself of the adjudication and contend that it is available against others. *Id.* Thus, "collateral estoppel can only be applied against parties who have had a prior 'full and fair' opportunity to litigate their claims. *C.A. Hardy v. Johns-Manville Sales Corp.* (C.A.5, 1982), 681 F.2d 334, 338." (Footnote omitted.) *Id.* at 197-198. "In order to preclude

either party from relitigating an issue, a judgment must be preclusive on both." *Goodson* at paragraph one of the syllabus.

{¶32} *Oblinger*, 163 Ohio App.3d 266, 2005-Ohio-4695, 837 N.E.2d 815 (1st Dist.), was styled as a declaratory judgment action. Pursuant to R.C. 2721.12(A), only parties to a declaratory judgment action are bound by the judgment. Hence, appellants would not have been bound by *Oblinger* if the First District had reached a decision adverse to their interests. Without mutuality upon which the trial court could apply the doctrine of collateral estoppel, National Union was free to assert the validity of its rejection of UM/UIM coverage.

{¶33} Based on the foregoing, we find the trial court properly found that appellants were not entitled to UM/UIM coverage as a matter of law. The first and second assignments of error are overruled.

### Insurance Expert Report

{¶34} In the third assignment of error, appellants argue the trial court erred in granting National Union's motion to strike the affidavit and report of their expert, Daniel N. Sutherin ("Sutherin"). Appellants contend their expert report did not constitute discovery and should not have been subject to the discovery deadline.

{¶35} Appellants produced Sutherin's report for the first time to support their brief in opposition to National Union's motion for summary judgment. They never produced the expert report prior to the discovery or expert report deadlines.

{¶36} If an opposing party requires additional time to produce facts essential to the opposition motion, the party may seek a continuance under Civ.R. 56(F). *Gates Mills Invest. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 169, 392 N.E.2d 1316 (8th Dist.1978). However, Civ.R. 56(F) requires that the motion for additional time for discovery be supported by the nonmovant's affidavit, which must contain sufficient reasons showing why such party was unable to obtain an affidavit of facts to oppose the summary judgment earlier. *Morantz v. Ortiz*, 10th Dist. No. 07AP-587, 2008-Ohio-1046. A party who fails to seek relief under Civ.R. 56(F) in the trial court, fails to preserve the issue on appeal. *Jackson v. Walker*, 9th Dist. No. 22996, 2006-Ohio-4351, ¶ 17, citing *R & R Plastics, Inc. v. F.E. Myers Co.*, 92 Ohio App.3d 789, 637 N.E.2d 332 (6th Dist.1993).

{¶37} Appellants argue their insurance expert report should have been admissible to support their opposition to National Union's motion for summary judgment because they did not realize they would need an expert until National Union had produced all of its responses to their discovery requests. However, it is undisputed that appellants did not produce the expert report prior to filing their brief in opposition to National Union's motion for summary judgment. It is also undisputed that they did not produce their expert report before the discovery or expert report deadlines had passed, and they never sought leave to produce an expert report under Civ.R. 56(F). Therefore, they failed to preserve this issue on appeal, and we find no abuse of discretion in the court's striking appellants' expert report.

{¶38} The third assignment of error is overruled.

Supplemental Evidence

**{¶39}** In the fourth and fifth assignments of error, appellants argue the trial court abused its discretion when it granted National Union's motions for leave to file supplemental evidence. In the sixth assignment of error, they also argue the court abused its discretion in denying their motion to strike Clarke's supplemental affidavit as untimely.

**{¶40}** Civ.R. 56(E) states that a "court may permit affidavits to be supplemented or opposed by depositions or by further affidavits." *McGuinness v. Hooper*, 2d Dist. App. No. 16551, 1998 WL 46688 (Feb. 6, 1998). "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of a trial court." *State v. Joseph*, 73 Ohio St.3d 450, 460, 653 N.E.2d 285 (1995), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph seven of the syllabus.

**{¶41}** National Union sought leave of court to produce supplemental evidence, including Clarke's supplemental affidavit, as required by Civ.R. 56(E) and (F). In the motion, National Union explained that appellants raised for the first time the issue that National Union was collaterally estopped from arguing the validity of the rejection form pursuant to *Oblinger*, 163 Ohio App.3d 266, 2005-Ohio-4695, 837 N.E.2d 815 (1st Dist.). Further, despite the enactment of H.B. 261 and this court's decision in *Rice*, appellants maintained that National Union still had to prove that USF had authority from Holland to

reject UM/UIM coverage. Because much of this evidence was in the possession of Yellow Freight, the successor of USF, who was not a party to the case, National Union requested additional time to obtain and present this evidence.

{¶42} The Ohio Supreme Court has determined that a continuance, or extension of time, is based on a party's right to have his case heard upon the merits. *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942). Appellants' response brief raised new issues that National Union had not addressed in its motion for summary judgment. Granting leave to supplement the record to respond to the new issues allowed the trial court to consider all the evidence and hear the case on its merits.

{¶43} Furthermore, National Union did not delay in seeking leave and complied with Civ.R. 56(E) and (F) by explaining its need to submit additional evidence. National Union needed Clarke's supplemental affidavit and other documentary evidence to address the new issues raised in appellants' response brief. For these reasons, we find the trial court did not abuse its discretion in denying appellants' motion to strike Clarke's supplemental affidavit or in granting National Union leave to submit supplemental evidence.

{¶44} The fourth, fifth, and sixth assignments of error are overruled.

Amended Complaint

{¶45} In the seventh assignment of error, appellants argue the trial court abused its discretion in denying their motion to amend their complaint.

{¶46} A trial court's decision whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. *Cselpes v. Cleveland Catholic Diocese*, 109 Ohio App.3d 533, 541, 672 N.E.2d 724 (8th Dist.1996). If a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny the motion to amend the pleading. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.,* 60 Ohio St.3d 120, 123, 573 N.E.2d 622 (1991).

{¶47} Appellants sought leave to add a claim for coverage under the Umbrella Policy and a bad faith claim. Appellants alleged that National Union acted in bad faith by failing to admit coverage and pay their claims pursuant to *Oblinger,* 163 Ohio App.3d 266, 2005-Ohio-4695, 837 N.E.2d 815 (1st Dist.). However, *Oblinger* was decided on September 9, 2005, almost four years before appellants filed their motion to amend the complaint. They filed the motion to amend the complaint after National Union had already filed its renewed motion for summary judgment. As previously discussed, National Union had a valid defense to appellants' collateral estoppel argument based on *Oblinger.* Under these circumstances, the trial court properly concluded that appellants failed to make a prima facie showing in support of the bad faith claim.

{¶48} Appellants failed to challenge the trial court's denial of their motion to add a claim under the Umbrella Policy in their merit brief. Pursuant to App.R. 12(A)(2), we may disregard any assigned errors if the party raising them "fails to identify in the record

the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R.16(A)." App.R. 12(A)(2).

{¶49} Accordingly, the seventh assignment of error is overruled.

Nationwide Policy

{¶50} In the eighth assignment of error, appellants argue the trial court erred in granting Nationwide's motion for summary judgment because Roush had UM/UIM coverage under his individual policy with Nationwide. Appellants contend the trial court erroneously found that Roush was excluded under his Nationwide policy because this conclusion is contrary to the parties' intent and violates former versions of R.C. 3937.18.

{¶51} The sole issue raised in this assignment of error is the interpretation of an exclusion in Roush's Nationwide policy. Insurance policies are contracts and their interpretation is a matter of law for the court. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 187, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 6, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 271, 374 N.E.2d 146 (1978), paragraph one of the syllabus. Insurance coverage is determined by reasonably construing the contract in conformity with the parties' intentions, as interpreted from the common and ordinary meaning of the language employed. *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 211, 519 N.E.2d 1380 (1988). If an insurance contract provision is reasonably susceptible to more than one interpretation, its provisions will be construed strictly against the insurer and liberally in favor of the insured. *Id.* at syllabus. An exclusion in an insurance policy is interpreted as applying only to that which is clearly intended to be

excluded. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992).

{¶52} The exclusion in Roush's Nationwide policy states:

**Coverage Exclusions:**

This coverage does not apply to:

\*   \*   \*

3. Bodily injury suffered while occupying a motor vehicle:

a) owned by you;

b) furnished to; or

c) available for the regular use of; you or a relative, but not insured for Auto Liability Coverage under this policy.

{¶53} It is undisputed that at the time of the accident, Roush was driving a truck his employer furnished to him for his regular use in his job as a truck driver. It is also undisputed that the truck he was driving was not insured under Roush's Nationwide policy. Under the plain and unambiguous language of the exclusion, Roush was excluded from coverage under his policy.

{¶54} The exclusion in Roush's Nationwide policy, which was issued on September 14, 2000, is enforceable under the applicable version of R.C. 3937.18, which was amended by H.B. 261. In H.B. 261, the General Assembly mandated that all automobile insurance policies offer UM/UIM coverage for loss due to bodily injury or death suffered by an insured. However, it also added a provision that UM/UIM coverage may include terms and conditions that would preclude coverage for bodily injury or death

suffered by an insured. For example, R.C. 3937.18(J)(1) provides that coverage may be precluded:

> While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorists coverages are provided.

**{¶55}** The language contained in R.C. 3937.19(J)(1) is unambiguous. *Kyle v. Buckeye Union Ins. Co.*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195. In very clear terms, R.C. 3937.18(J)(1) allowed Nationwide to exclude coverage to Roush, who was a operating motor vehicle furnished to him or available for his regular use by his employer. The vehicle was not specifically identified in the policy under which a claim was made. Therefore, we find Roush was excluded from UM/UIM coverage under his personal Nationwide policy.

**{¶56}** The eighth assignment of error is overruled.

**{¶57}** Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS IN JUDGMENT ONLY;
EILEEN A. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION
ATTACHED)

EILEEN A. GALLAGHER, J., DISSENTING:

{¶58} Because I conclude that USF failed to validly reject UM/UIM coverage in this case and that the trial court erred in striking appellants' expert report, I respectfully dissent, in part and concur, in judgment only, in part, from the majority opinion.

{¶59} In their first and second assignments of error, appellants co-mingle several arguments as to why the trial court erred in granting defendant appellee National Union's motion for summary judgment. The majority opinion addresses each of these arguments in turn, ultimately overruling each claim. It is only with respect to the majority's analysis of appellants' claim that USF failed to validly reject UM/UIM coverage offered in National Union's policy, that I dissent. I find no issue with the remainder of the majority's disposition of appellants' remaining arguments contained within their first and second assignments of error.

{¶60} In the present case, there is no dispute as to the material facts concerning the accident. The parties agree that there remains the legal issue of whether the appellees' owed coverage under R.C. 3937.18, as amended in 1997 by H.B. No. 261 and S.B. 57, which was in effect at the time of the accident. In granting summary judgment, and in affirming that grant on appeal, the trial court and the majority opinion, respectively,

determined that no coverage existed as National Union made a valid offer of UM/UIM coverage, which USF properly rejected. I disagree.

{¶61} The requirements for a valid rejection of UM/UIM coverage are enumerated in *Linko v. Indemn. Ins. Co. of N. Am.,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000). In *Linko*, the court held that an offer of UM/UIM coverage must inform the insured of the availability of UM/UIM coverage, describe the coverage, list the premium costs of the coverage, and expressly state the coverage limits. *Id.* If the offer or the rejection of coverage does not establish that these requirements have been met, coverage arises by operation of law. *Id.* More recently, the Ohio Supreme Court has held that once a signed rejection form has been produced, the elements of the offer, as required under *Linko*, may be demonstrated by extrinsic evidence. *State v. Hollon*, 104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881.

{¶62} Applying this case law to the facts at hand, the majority concluded that the documentary evidence, which included the affidavits of Thomas Clarke, USF's risk manager, unequivocally demonstrated USF's intent to reject UM/UIM coverage.

{¶63} However, in *Oblinger v. State Auto Ins. Co.*, 163 Ohio App.3d 266, 2005-Ohio-4695, 837 N.E.2d 815, the First District Court of Appeals analyzed the issue of rejection of UM/UIM coverage and, more importantly, analyzed the exact rejection form supplied by National Union, and determined that USF's rejection was invalid.

{¶64} In *Oblinger*, the plaintiff was injured while driving a truck for his employer, USF Dugan, in December 2000. The truck was owned by USF, a parent corporation of

USF Dugan, and both corporations were insured under National Union. The plaintiff sued the uninsured driver who caused the accident and filed a UM/UIM claim against his employer's insurer, National Union. As in this case, National Union claimed that USF declined UM/UIM coverage and the plaintiff argued that the UM/UIM rejection form was invalid because it did not meet the *Linko* requirements.

{¶65} The trial court granted summary judgment in favor of National Union. The court of appeals, however, reversed the decision and held that this UM/UIM rejection form was invalid, and that there was coverage as a matter of law. *Id*. In particular, the *Oblinger* court determined that the rejection form and the extrinsic evidence did not satisfy the *Linko* requirements for a valid rejection of UM/UIM coverage. More specifically, the court found that the rejection form, while it declared the availability of UM/UIM coverage and described in general terms the nature of such coverage, was utterly silent as to the premium costs of such coverage or the policy limits.

{¶66} Then, as held by the Ohio Supreme Court in *Hollon*, the *Oblinger* court looked to the affidavit of Thomas Clarke, which National Union provided to supplement the terms of the rejection form. The court quoted from Clarke's affidavit, which stated that "Within the four corners of the *** Policy, the Rejection Form describes the UM/UIM coverage, gives premium cost and expressly state [sic] the coverage limits." *Id*. The First District determined that despite the recitation in Clarke's affidavit that the rejection form included the *Linko* requirements, the form manifestly did not. *Id*.

> [T]he form was completely silent as to premium cost and coverage limits. Clarke's assertion that the form included that information did not make it

so. And because Clarke did not aver that he had been informed of the *Linko* elements by any source other than the rejection form itself, the evidence did not support the trial court's holding that U.S. Freightways had validly rejected UM/UIM coverage.

*Id.* at ¶ 23.

**{¶67}** In the present case, I agree with the First District's conclusion that the rejection form supplied by National Union fails to satisfy the *Linko* requirements for rejection of UM/UIM coverage. The form does not describe the premium costs of UM/UIM coverage or the policy limits of such coverage. Thus, I am unable to determine whether USF made a meaningful rejection of the coverage. Next, I would look to the extrinsic evidence supplied by National Union. Similar to *Oblinger*, the affidavit supplied by National Union in the present case does not include the *Linko* requirements either. The affidavit does not specify the coverage premiums, it does not describe the coverage nor does it state the coverage limits in the offer. While National Union does supplement this affidavit with further evidentiary materials in an attempt to prove USF's intent to reject UM/UIM coverage, I cannot ignore that the most basic elements of that offer are not included in those materials. As such, I cannot conclude that USF made a meaningful rejection of UM/UIM coverage.

**{¶68}** I am aware of this court's decision in *Bossin,* and I find this case factually distinguishable. It is my opinion that, while not requiring form over substance, an entity wishing to validly reject UM/UIM coverage must make it clear that there was a meaningful offer of said coverage. This simply cannot be done without a detailing of the premium costs, a description of the coverage and the limits that coverage provides.

As these elements were missing in both the rejection form and the extrinsic evidence provided by National Union, I would find that the trial court erred in deciding that there had been a valid rejection of UM/UIM coverage under the National Union policy. Thus, I would conclude that coverage arose by operation of law.

{¶69} Accordingly, I would affirm, in part, and overrule, in part, appellants' first and second assignments of error.

{¶70} Lastly, while I cannot ignore that appellants failed to move for a continuance under Civ.R. 56(F), which would have preserved their issue of the stricken expert report for appeal, I concur in judgment only as to the majority's resolution of the third assignment of error.

{¶71} This case involves complex issues of law, and the record reveals the parties thoroughly litigated and defended their positions. The record also reveals that the trial court, on several occasions, extended the discovery deadlines to accommodate the parties in their need to examine additional evidence. I find the trial court's sudden rigidness to enforce discovery deadlines and outdated expert report cut-off dates to be arbitrary in light of its past practice.

{¶72} Based on the foregoing, I find it unreasonable that the trial court struck the affidavit and report of National Union's expert, Daniel N. Sutherin. I, therefore, concur in judgment only with respect to this portion of the majority's opinion.